William E. GRANT, Plaintiff–Appellant,

v.

Louis J. HOLLENBACH and William C. Grimes, Defendants–Appellees.

Nos. 87–5980, 88–5491.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 21, 1989.

Decided March 28, 1989.

Daniel T. Taylor, III (argued), Louisville, Ky., for plaintiff-appellant.

Frederic Cowden, Atty. Gen. of Ky., Frankfort, Ky., Greg Holmes (argued), for defendants-appellees.

Before WELLFORD and NORRIS, Circuit Judges, and EDWARDS, Senior Circuit Judge.

WELLFORD, Circuit Judge.

This case involves the question of whether two county prosecutors in Kentucky are absolutely immune from suit under § 1983 for their involvement in the indictment of the plaintiff for child abuse. Plaintiff, a university professor, claims that the two prosecutors and two other individuals, one of them his former wife, conspired to bring false charges before the county grand jury. Because the prosecutors' challenged conduct occurred while they were functioning in a "quasi-judicial" or "advocatory" role, we conclude that they are entitled to absolute immunity, and accordingly we affirm.

William E. Grant, the plaintiff, has been involved in a bitter child custody battle with Nancy Belle Fuller, one of the defendants. He contends that Fuller conspired with two Jefferson County, Kentucky prosecutors, Ted Hollenbach and William C. Grimes, and Mike Gorman, a California police officer, to deprive Grant of his constitutional rights in violation of 42 U.S.C. § 1983.[1] Grant alleges that defendant

---

1. Plaintiff also alleged violation of 42 U.S.C. § 1985. "Section 1985 requires, as an element

of the cause of action, the kind of invidiously discriminatory motivation stressed by the spon-

Grimes, a deputy prosecutor, knowingly presented false information to a Jefferson County, Kentucky grand jury for purposes of indicting Grant on charges of sexually abusing his son. Grant alleges that Grimes and Hollenbach, the county prosecuting attorney, acted to further the latter's political ambition and at the instance of Fuller so she could use the criminal charges to her advantage in their custody dispute over their son. The question on appeal is whether Grimes and Hollenbach, the county prosecutors, are immune from the charges of a § 1983 violation stemming from their involvement in this controversy.

Sometime in 1985, Fuller filed a complaint in Jefferson County alleging that Grant sexually abused their infant son. Although it is not entirely clear from the pleadings, Fuller apparently employed Gorman, a police officer for the City of Walnut Creek, California, to investigate Grant's conduct and make a report on the alleged episode of sexual abuse. At one point in the complaint, Grant alleges that the report was fabricated at the request of Grimes and Hollenbach. At another point in the complaint, however, he alleges that Fuller enlisted Gorman to write a false report and that Hollenbach and Grimes only used it to obtain an indictment of Grant.

In October 1985, Grimes was in possession of the evidence which was subsequently used in the prosecution. In January 1986, Hollenbach took office as the new duly-elected Commonwealth's Attorney for Jefferson County. Hollenbach allegedly campaigned for this elected office promising, among other things, to crack down on child abusers.

Shortly after Hollenbach took office, Grimes and another Assistant Commonwealth Attorney presented the evidence to a grand jury against Grant for violating Ky.Rev.Stat. § 510.070, first degree sodomy, involving substantial punishment.[2] Although plaintiff's complaint was not precise, Grant's attorney stated at oral argument that Assistant Commonwealth Attorney Marshall presented the case before the grand jury. Grimes was alleged to be the only person to testify before the grand jury as the state's witness.

Grimes allegedly stated that the State possessed evidence indicating that Grant had sexually abused his son, and made some reference to an audio tape with respect to that accusation. Grant claims that all the evidence Grimes presented to the grand jury was known, or should have been known, to be "false, incompetent, or inadmissible."

In addition, Grant alleges that Hollenbach and Grimes "failed to conduct an objective and impartial investigation as to the charge, and the credibility and competency of the accusers...." He also claims that Grimes excluded from his testimony exculpatory evidence to the effect that Fuller, on other occasions, had brought criminal charges against Grant only to drop them later. Grant also claims that Grimes and Hollenbach failed to investigate properly after the indictment was returned. The Kentucky state court dismissed the criminal charges against Grant stating that the victim-child, whose testimony was vital,

---

sors of the limiting amendment.... The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class based, invidiously discriminatory animus behind the conspirators' action." *See Griffen v. Breckenridge*, 403 U.S. 88, 102 & n. 10, 91 S.Ct. 1790, 1798 & n. 10, 29 L.Ed.2d 338 (1971). Our immunity discussion applies whether a § 1983 or § 1985 violation is alleged, but plaintiff has not alleged himself to be the victim of any class-based animus.

**2.** The statute reads in its entirety:
**Sodomy in the first degree.**—(1) A person is guilty of sodomy in the first degree when:

(a) He engages in deviate sexual intercourse with another person by forcible compulsion; or

(b) He engages in deviate sexual intercourse with another person who is incapable of consent because he:

1. Is physically helpless; or
2. Is less than twelve (12) years old.

(2) Sodomy in the first degree is a Class B felony unless the victim is under twelve (12) years old or receives a serious physical injury in which case it is a Class A felony. (Enact. Acts 1974, ch. 406, § 87.)

was incompetent to testify under Kentucky law.

Grant, about a year later, filed this claim against Fuller, Gorman, Hollenbach and Grimes. In response, defendants Hollenbach and Grimes filed a motion to dismiss claiming that they were absolutely immune under § 1983 as prosecutors. The district court granted defendants' motion finding that the defendants were indeed immune from liability.[3]

"[A] prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976). Absolute immunity is available to prosecutors because the Court fears that exposing a prosecutor to § 1983 lawsuits growing out of his official activity would divert "his energy and attention ... from the pressing duty of enforcing the criminal law." *Id.* at 425, 96 S.Ct. at 992. Absolute immunity allows a prosecutor to exercise his independent judgment in "deciding which suits to bring and in conducting them in court" based on his duty to the public rather than on a fear of potential liability in a suit for damages. *Id.* at 424–25, 96 S.Ct. at 992–93. *See also Joseph v. Patterson*, 795 F.2d 549, 553–55 (6th Cir. 1986), *cert. denied*, 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987) (discussing *Imbler*).

The *Imbler* rule affords prosecutors absolute immunity from potential § 1983 lawsuits when the prosecutor's "challenged activities [were] an 'integral part of the judicial process.'" *Imbler*, 424 U.S. at 430, 96 S.Ct. at 995. Absolute immunity protects a prosecutor from exposure to lawsuits, not just liability; "[t]he rationale for granting absolute immunity is 'as much to protect the relevant persons from a trial on their actions as it is to protect them from the outcome of the trial.'" *McSurely v.*

*McClellan*, 697 F.2d 309, 315 (D.C.Cir.1982) (quoting *Briggs v. Goodwin*, 569 F.2d 10, 59 (D.C.Cir.1977) (Wilkey, J., concurring), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978)).

The *Imbler* Court, however, noted that the prosecutor's responsibilities could "cast him in the role of an administrator or investigative officer rather than that of advocate." *Id.* at 430–31 & n. 33, 96 S.Ct. at 994–95 & n. 33. The Court suggested that a prosecutor's absolute immunity would extend only to his actions as an officer of the court, in the course of the judicial process, and not to his actions as a mere administrator or investigator. *Id.* at 431 n. 33, 96 S.Ct. at 995 n. 33. "Drawing a proper line between these functions may present difficult questions...." *Id. See Joseph*, 795 F.2d at 563–65 (Nelson, J., concurring and dissenting).

To determine when the prosecutor is entitled to absolute immunity, the Supreme Court has adopted what is called a "functional approach." It examines "the nature of the functions with which a particular officer or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988). In *Forrester*, the Court faced questions of judicial immunity but also commented upon its extension to prosecutors, stating "[t]he nature of adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have.... [T]his is the principal characteristic that adjudication has in common with legislation *and with criminal prosecution*, which are the two other areas in which absolute immunity has been most generously been provided." *Id.*, 108 S.Ct. at 544 (emphasis added). We recognize

---

**3.** In an earlier proceeding, another panel of this court remanded this case to the district court stating that "an order granting immunity is not appealable." *Grant v. Hollenbach*, No. 87–5980, slip op. at 1 (6th Cir. March 21, 1988). The district court, upon remand, issued a new order and memorandum outlining its reasons for

granting leave to appeal prior to the final disposition of the case, still pending as the two remaining defendants. The district court stated that the interests of justice and efficiency required a swift and final resolution of the prosecutors' immunity claim.

also the caution in *Forrester* that absolute immunity is "strong medicine" which is invoked only in appropriate cases where there is danger of being deterred from or chilled in the exercise of what is essentially a judicial function. 108 S.Ct. at 545.

"Functional analysis" focuses on the role of the prosecutor at the time he engages in the challenged conduct. "Absolute prosecutorial immunity is not defeated by a showing that the prosecutor acted wrongfully or even maliciously, or because the criminal defendant ultimately prevailed on appeal or in a habeas corpus proceeding." M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 7.8 (1986). In *Imbler,* for example, the prosecutor was absolutely immune even for allegedly knowingly using perjured testimony and suppressing exculpatory material at trial. *Imbler,* 424 U.S. at 427 n. 27, 96 S.Ct. at 994, n. 27. In comparison, in *Mitchell v. Forsyth,* 472 U.S. 511, 524, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985), the Attorney General was deemed by a plurality not to be "acting in a prosecutorial capacity." Even if not entitled to absolute immunity, a prosecuting attorney may claim qualified immunity.[4]

To distinguish between conduct entitled to absolute immunity and conduct entitled to qualified immunity, "the critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate ultimately associated with the judicial phase of the criminal process."[5] *Joseph v. Patterson,* 795 F.2d 549, 554 (6th Cir.1986).

The trial court was, as is this court, required to regard the factual allegations in the complaint as true. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–49, 15 L.Ed.2d 247 (1965); *Graham v. NCAA,* 804 F.2d 953, 957 (6th Cir.1986). The claim should not be dismissed unless it appears clear that plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). *See also Ana Leon T. v. Federal Reserve Bank of Chicago,* 823 F.2d 928, 930 (6th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987) (also noting, in civil rights context, "the allegations must be more than mere conclusions, or they will not be sufficient to state a civil rights claim").

■ Grant challenges Hollenbach's motive to prosecute the child abuse case against him. Grant claims that the decision was made either in collusion with Fuller to help her in her custody dispute or for political reasons. The decision to prosecute, however, "even if malicious and founded in bad faith, is unquestionably advocatory and at the heart of the holding in *Imbler.*" *Joseph,* 795 F.2d at 557 (citing *Imbler,* 424 U.S. at 424, 96 S.Ct. at 992). *See also* Annotation, *When is a Prosecutor Entitled to Absolute Immunity from Civil Suit for Damages under 42 U.S.C.S. Section 1983: Post–Imbler Cases,* 67 A.L.R.Fed. 640, 660–64 (1984 & Supp.). "Absent absolute immunity, suits for malicious prosecution or abuse of process would be a common response by defendants when the state's case fails.... Such susceptibility to damage actions would inhibit prosecutors from aggressively prosecuting cases and would deflect their energies." *Joseph,* 795 F.2d at 557 (citing *Imbler* ). Construing Hollenbach's conduct in bringing an indictment, we find him absolutely immune despite the challenge to his motivation.

■ Next, Grant alleges that the prosecutors failed to investigate the facts both before and after the indictment. Once again, it is clear that the *decision* of the prosecutors to investigate a serious criminal charge is protected by absolute immunity. This is not a case in which the prosecutor allegedly violated plaintiff's or anoth-

---

**4.** Qualified immunity varies "in proportion to the nature of [an] official['s] functions and the range of decisions that conceivably might be taken in 'good faith.'" *Nixon v. Fitzgerald,* 457 U.S. 731, 746, 102 S.Ct. 2690, 2699, 73 L.Ed.2d 349 (1982).

**5.** We have also referred to conduct entitled to absolute immunity as "quasi-judicial" or "advocatory." *Joseph v. Patterson,* 795 F.2d 549, 554 (6th Cir.1986).

er's constitutional rights through actual investigation. If a prosecutor is held subject to suit for being involved in investigation of evidence brought before a grand jury or a trial jury, he would clearly be inhibited in his duty to submit evidence to "the crucible of the judicial process so that the factfinder may consider it." *Imbler*, 424 U.S. at 440, 96 S.Ct. at 999 (White, J., concurring). Despite the allegations in this complaint, we hold the prosecutor immune from suit stemming from his decision to investigate or not to investigate and to present the facts discovered in a judicial proceeding, including presentment to a grand jury. *See* Annotation, 67 A.L.R.Fed. at 657–58.

■ Grant also contends that Grimes perjured himself at a witness before the grand jury. Once again, however, Grimes is absolutely immune from civil liability stemming from his testimony as a grand jury witness. "[T]he Supreme Court ... [has] held ... that witnesses in judicial proceedings are absolutely immune from civil liability under 42 U.S.C. § 1983 based on their testimony, even if they knowingly gave perjured testimony." *Macko v. Byron*, 760 F.2d 95, 97 (6th Cir.1985) (citing and discussing *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)). Although some authorities have disputed whether *Briscoe* applies to witnesses who testified before a grand jury, *see* M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* § 7.9 (1986 & Supp.), we have decided that *Briscoe* does apply to grand jury witnesses. *See Macko v. Byron*, 576 F.Supp. 875, 877 (N.D.Ohio 1983), *aff'd*, 760 F.2d 95 (6th Cir.1983).[6]

Grant, nevertheless, insists that the defendant prosecutors were acting in an administrative or investigatory fashion and are not protected by absolute immunity. He claims that he is entitled to a factual hearing by the district court in this regard. But if one assumes as true Grant's allegations in his complaint, he still cannot recover. A factual hearing is not required and

would run counter to the purpose of granting absolute immunity to those acting in the very course of the judicial process, resulting in the return of an indictment. In essence, Grant's claims relate to the presentment and return of the indictment and subsequent dismissal by the state judge.

Grant relied substantially in his brief on *Beard v. Udall*, 648 F.2d 1264 (9th Cir. 1981). We note that *Beard* was overruled by *Ashelman v. Pope*, 793 F.2d 1072 (9th Cir.1986) (en banc). In *Ashelman*, the court unanimously held that "a conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges and prosecutors." *See also Joseph v. Patterson, supra*.

We also are mindful that,

this immunity does leave the generally wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system. Moreover, it often would prejudice defendants in criminal cases by skewing post-conviction judicial decisions that should be made with the sole purpose of ensuring justice.

*Imbler*, 424 U.S. at 428, 96 S.Ct. at 994. "As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance, it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Imbler*, quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

---

**6.** The fact that Grimes is a state officer is of no consequence in the immunity decision. "[W]hen a police officer appears as a witness, he may reasonably be viewed as acting like any other witness ...; alternatively, he may be regarded as an official performing a critical role in the judicial process...." *Briscoe*, 460 U.S. at 335–36, 103 S.Ct. at 1115–16.

We conclude that Grimes' and Hollenbach's conduct, although allegedly wrongful in this case, springs directly from the execution of their duties as a judicial officer or as a witness, and they are entitled to absolute immunity from this § 1983 suit.

The decision of the district court is accordingly AFFIRMED.