**Carlos VILLESCAS, Plaintiff,**

v.

**Bill RICHARDSON, Secretary of the Department of Energy, and Janet Reno, Attorney General, Department of Justice, Defendants.**

No. Civ.A. 97–B–1955.

United States District Court,
D. Colorado.

Nov. 6, 2000.

---

**10.** *See, Weyer,* 198 F.3d 1104; *Chabner,* 225 F.3d 1042.

Darold W. Killmer, John T. Carlson, Miller, Lane, Killmer & Greisen, LLP, Denver, CO, for plaintiff.

Lois B. Osler, Lisa A. Olson, Karyn A. Temple, U.S. Department of Justice, Civil Division, Washington, DC, Regina M. Rodriguez, United States Attorney's Office, Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Defendants move for judgment on the pleadings, and summary judgment. Plaintiff moves to file a second amended complaint. All of the motions are opposed. The motions are adequately briefed, and oral argument would not materially aid their resolution. For the reasons set forth below, I grant in part and deny in part Defendants' motions, and deny as moot Plaintiff's motion. Jurisdiction exists under 28 U.S.C. § 1331.

### I.

The following facts are undisputed unless otherwise noted. For over ten years, Plaintiff held the position of Equal Employment Opportunity Manager for the Western Area Power Association (WAPA), an agency of the United States Department of Energy. In 1989, Plaintiff left WAPA to become the Deputy District Director in the Denver District of the United States Equal Employment Opportunity Commission. In 1992, Plaintiff testified in support of an administrative complaint of age and/or sex discrimination filed by Edward Craig, a WAPA employee.

After Mr. Craig lost his administrative case, he pursued his claims in the United States District Court for the District of Colorado. *See Craig v. O'Leary*, 93–K–1828. Plaintiff again agreed to provide testimony in support of Mr. Craig's case. During trial preparation in 1995, WAPA's Deputy General Counsel, Liova Juarez, investigated rumors that in the early to mid–1980s Plaintiff engaged in an adulterous relationship with a subordinate WAPA employee to whom he provided employment benefits in violation of federal anti-nepotism statutes and regulations, and fathered a child with the same woman prior to his divorce from his first wife. Ms. Juarez allegedly found corroborating evidence of these allegations from public documents obtained by Pat Scrivner at Ms. Juarez's

request. Ms. Juarez turned over the results of her investigation to J.B. Garcia, the Assistant United States Attorney who defended the Government in *Craig.*

Mr. Garcia subsequently sought to compel Plaintiff to produce various materials including his marriage license and birth certificates of his children. When Plaintiff moved for a protective order, the Government responded that the evidence sought was relevant in the employment discrimination case filed by Mr. Craig because it "pertain[ed] to [Plaintiff's] personal turpitude, such as to indicate such moral depravity or degeneracy on his part as would likely render him insensible to the obligations of an oath to speak the truth." Judge Kane rejected the Government's reasoning, and granted the protective order.

Approximately one month later, Ms. Juarez referred the allegations against Plaintiff to the Office of Inspector General for disciplinary proceedings. The Inspector General's office refused to open an investigation. Plaintiff subsequently filed this suit on September 9, 1997 alleging that Defendants' actions in the *Craig* case, and in filing the charges with the Inspector General's office, constituted both illegal retaliation in violation of Title VII, and the Age Discrimination in Employment Act (ADEA), and a violation of the Privacy Act.

On June 5, 1998, Defendants moved pursuant to Rules 12(b)(1) and 12(b)(6) to dismiss the Title VII and ADEA claims against Defendant Department of Justice (DOJ) contending, *inter alia,* that Defendant DOJ did not qualify as an "employer" of Plaintiff. Defendants also sought dismissal of the Privacy Act claim on the basis that the statute of limitations had expired prior to Plaintiff's filing of his claim. I denied the motion on February 16, 1999 because of the fact-intensive nature of the motion. Defendants then filed a motion to dismiss pursuant to Rule 12(c) on April 30, 1999 in which they, *inter alia,* reasserted the arguments that Plaintiff is

not an "employee" of Defendant DOJ, and Plaintiff's Privacy Act claim is time-barred. On July 27, 1999, I denied the Rule 12(c) motion in part because motions made pursuant to Rules 12(b), and 12(c) are analyzed under the same standard of review and, consequently, my February 16, 1999 order was the law of the case on these arguments.

On May 1, 2000, Defendants moved to dismiss again pursuant to Rule 12(c) asserting that they are absolutely immune from Plaintiff's claims. Defendants also moved for summary judgment on May 22, 2000. On July 7, 2000, Plaintiff moved to file a second amended complaint.

## II.

### A.

A Rule 12(c) motion for judgment on the pleadings is reviewed under the standard of review applicable to a Rule 12(b)(6) motion to dismiss. *McHenry v. Utah Valley Hosp.,* 927 F.2d 1125, 1126 (10th Cir. 1991). Thus, dismissal is appropriate only if it appears that a plaintiff can prove no set of facts under which he would be entitled to relief. *Coosewoon v. Meridian Oil Co.,* 25 F.3d 920, 924 (10th Cir.1994). I must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to plaintiff. *Id.* The dismissal of a complaint is a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Summum v. Callaghan,* 130 F.3d 906, 913 (10th Cir.1997) (quotations omitted). In analyzing a motion for judgment on the pleadings, I exclude from consideration all material presented outside the pleadings. *See Biester v. Midwest Health Services, Inc.,* 77 F.3d 1264, 1265 (10th Cir.1996).

### B.

Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, ad-

missions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The very purpose of a summary judgment motion is to assess whether a trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that demonstrate the absence of genuine issues for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992).

Once a properly supported summary judgment motion is made, the non-moving party has the burden of showing that issues of undetermined material fact exist. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. In so doing, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Unsupported allegations "without any significant probative evidence tending to support the complaint" are insufficient, *White*, 45 F.3d at 360 (internal quote and citation omitted), as are conclusory assertions that factual disputes exist. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate if genuine issues of material fact exist. *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir.1997).

In ruling on summary judgment, I must view the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. *See id.* If no reasonable juror could find for the nonmoving party based on the evidence present in the motion and response, then summary judgment is proper and a trial is unnecessary. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment should not enter if a reasonable trier of fact could return a verdict for the nonmoving party. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505; *Mares*, 971 F.2d at 494.

C.

The analytical framework first pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) applies to retaliation claims brought under Title VII and the ADEA. *See Cisneros v. Wilson*, 226 F.3d 1113, 1132 (10th Cir.2000) ("Retaliation claims generally proceed under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) burden-shifting analysis."); *McGarry v. Board of County Comm'rs*, 175 F.3d 1193, 1201 (10th Cir.1999) (applying *McDonnell Douglas* framework to Title VII retaliation claim); *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 634 (10th Cir.1988) (applying *McDonnell Douglas* framework to ADEA retaliation claim). *But see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2105–06, 147 L.Ed.2d 105 (2000) (assuming, without deciding, that *McDonnell Douglas* framework is applicable to ADEA cases). In the summary judgment context, a plaintiff initially must raise a genuine issue of material fact on each element of the *prima facie* case. *See id.* (citing *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1174 (10th Cir.1996)). To establish a *prima facie* case of retaliation under Title VII or the ADEA, a plaintiff must demonstrate that: (1) he engaged in protected opposition to statutorily prohibited discrimination; (2) his employer took adverse

action contemporaneously or subsequent to his protected activity; and (3) a causal connection exists between the employer's adverse action and his protected activity. *See Lowe,* 87 F.3d at 1176 (citing *Meredith v. Beech Aircraft Corp.,* 18 F.3d 890, 896 (10th Cir.1994)).

After a plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision. *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995). In the summary judgment context, the burden then reverts to the plaintiff to show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* Demonstrating pretext allows a plaintiff to clear " 'the hurdle of summary judgment.' " *Randle,* 69 F.3d at 452 (quoting *Ingels v. Thiokol Corp.,* 42 F.3d 616, 622 n. 3 (10th Cir.1994)). Pretext can be shown by " 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.' " *Morgan,* 108 F.3d at 1323 (quoting *Olson v. General Elec. Astrospace,* 101 F.3d 947, 951–52 (3d Cir.1996) (further citation omitted)). " '[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.' " *Id.* (quoting *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir.1988)). The burden of persuasion nevertheless remains with a plaintiff at all times. *See White,* 45 F.3d at 361.

### III.

### A.

■ Plaintiff moves to file a *Second Amended Complaint* to add specific allegations regarding Ms. Juarez's referral of the allegations against Plaintiff to the Office of Inspector General. Nevertheless, the *Pretrial Order* specifically references the referral as a basis for Plaintiff's claims. *See Pretrial Order* at 5. As the Tenth Circuit has held, "[w]hen an issue is set forth in a pretrial order, it is not necessary to amend previously filed pleadings" because "the pretrial order is the controlling document for the trial." *Expertise, Inc. v. Aetna Fin. Co.,* 810 F.2d 968, 973 (10th Cir.1987). Consequently, I deny as moot Plaintiff's motion.

In addition, I find unconvincing Defendants' argument that allowing Plaintiff to pursue a claim regarding the disciplinary referral would "deprive[ ] defendants of fair notice" because they were unaware of this claim until Plaintiff's response to the motion for summary judgment. *Defendants' Summary Judgment Reply* at 14. As an initial matter, I was sufficiently aware the referral was an issue in this case to include it in the factual summary section of my February 28, 2000 order. *See also Plaintiff's Objection to Magistrate's Discovery Order* at 4–5 (filed Jan. 7, 2000) (arguing that the referral constitutes illegal retaliation). Consequently, Defendants should have been aware at least as of February 28, 2000 that Plaintiff alleged Ms. Juarez's referral constituted illegal retaliation. In addition, Defendant signed the Pretrial Order, which includes the referral as a basis for Plaintiff's claims, on June 20, 2000, three days before Plaintiff filed his response to Defendants summary judgment motion. *See Pretrial Order* at 5. If Defendants were surprised by the reference to the referral, they should have raised the issue *before* they and the Magistrate Judge signed the Pretrial Order. Finally, Defendants have not made a showing of the type of "manifest injustice" necessary to amend the Pretrial Order. *Pretrial Order* at 13 (all prior "pleadings will be deemed merged herein," and "th[e][ ] Pretrial Order will control the subsequent course of this action ... and may not be amended except ... by order of the court to prevent manifest injus-

tice."). Under these circumstances, I will not reject Plaintiff's claim that the disciplinary referral constitutes illegal retaliation.

### B.

In their Rule 12(c) motion, Defendants argue they are absolutely immune from Plaintiff's claims. Specifically, Defendants state that because Mr. Garcia and Ms. Juarez are entitled to absolute immunity, Defendants cannot be held vicariously liable for their actions. Plaintiff responds that Defendants waived the affirmative defense of absolute immunity. Even if Defendants have not waived their absolute immunity defense, Plaintiff argues that he has brought his claims against the Departments of Energy and Justice in their capacities as employers, and both Title VII and the ADEA allow such suits. I address each argument in turn.

### 1.

Plaintiff's argument that Defendants failed to plead, and thereby waived, their immunity defense is unpersuasive. Defendants raised their immunity argument in their motion for judgment on the pleadings, and the *Pretrial Order* specifically incorporates all defenses made in it. *See Pretrial Order* at 5. Under Tenth Circuit authority, inclusion of affirmative defenses in pretrial orders satisfies Rule 8(c). *See Bentley v. Cleveland County Bd. of County Comm'rs*, 41 F.3d 600, 605 (10th Cir.1994) (defendant "waived any limit on its liability afforded by that statute by failing to raise the issue in its answer, the *Pre–Trial Order*, or at trial.") (emphasis added); *Expertise, Inc. v. Aetna Fin. Co.*, 810 F.2d 968, 973 (10th Cir.1987) ("the [statute of] limitations defense was not waived because it was included in the pretrial order."). Accordingly, I will not dismiss Defendants' immunity-based defense for failure to comply with Rule 8(c).

### 2.

The Supreme Court has held that a prosecutor is absolutely immune for activities which are "intimately associated with the judicial [process]" such as initiating and pursuing a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Absolute immunity has also been extended to government attorneys defending civil actions. *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1372 (10th Cir.1991) ("we recognize that prosecutors and government lawyers defending civil actions have been granted absolute immunity"). However, immunity traditionally does not extend to a prosecutor's actions undertaken with "a clear absence of authority," *Snell v. Tunnell*, 920 F.2d 673, 692 n. 18 (10th Cir.1990), *cert. denied*, 499 U.S. 976, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991), or which may be classified as administrative or investigative. *Id.* at 430–31, 96 S.Ct. 984; *Harlow v. Fitzgerald*, 457 U.S. 800, 811 n. 16, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Under certain circumstances, absolute immunity "may attach even to [ ] administrative or investigative activities 'when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court.'" *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir.1991) (quoting *Snell*, 920 F.2d at 693).

In deciding questions of immunity, the Supreme Court has taken a functional approach. *See, e.g., Briscoe v. LaHue*, 460 U.S. 325, 334–35, 345, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Relevant factors include the recognition of immunity at common law, the risk of vexatious litigation given the function involved, and the availability of checks on prosecutorial conduct if absolute immunity was recognized. *Burns v. Reed*, 500 U.S. 478, 489–496, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). "The more distant a function is from the judicial process, the less likely absolute immunity will attach." *Snell*, 920 F.2d at 687. In any event, "[a]lthough identifying those acts entitled to absolute immunity is not always easy, the determinative factor is 'advocacy' because that is the prosecutor's main function and the one most akin to his quasi-judicial role." *Rex v. Teeples*, 753

F.2d 840, 843 (10th Cir.), *cert. denied,* 474 U.S. 967, 106 S.Ct. 332, 88 L.Ed.2d 316 (1985). Because absolute immunity is of a "rare and exceptional character," *Cleavinger v. Saxner,* 474 U.S. 193, 202, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), "[it] extends no further than necessary to protect those activities" "intimately associated" with the judicial process. *Rex,* 753 F.2d at 843. "Investigative acts that fall outside the scope of absolute immunity are accorded qualified immunity." *Scott v. Hern,* 216 F.3d 897, 908–9 (10th Cir.2000) (citing *Pfeiffer,* 929 F.2d 1484, at 1490 n. 6). I address the immunity of each Defendant in turn.

a.

i.

■ Defendant DOE is being sued ostensibly for the actions of Ms. Juarez. Ms. Juarez, in turn, is not absolutely immune for the investigation of Plaintiff she directed, or her referral of the allegations against Plaintiff to the Office of Inspector General. Given the distance of her investigative actions and referral from the judicial·process, they cannot be deemed "intimately associated" with it. *Imbler,* 424 U.S. at 430, 96 S.Ct. 984.

Moreover, Ms. Juarez's actions were not " 'necessary so that [Mr. Garcia could] fulfill his function as an officer of the court.'" *Pfeiffer,* 929 F.2d at 1490 (quoting *Snell,* 920 F.2d at 693). All of the cases cited by the Tenth Circuit in which absolute immunity has been extended to investigative actions on such a basis involved prosecutors pursuing allegations of criminal conduct before seeking indictments. *See Grant v. Hollenbach,* 870 F.2d 1135, 1138 (6th Cir.1989); *Gobel v. Maricopa County,* 867 F.2d 1201, 1204 (9th Cir. 1989); *Marx v. Gumbinner,* 855 F.2d 783, 792 (11th Cir.1988). I am not aware of any case relied upon by the Tenth Circuit in which absolute immunity has been granted to the investigative actions of a government attorney defending a civil action, much less to an individual such as Ms.

Juarez who, according to her own deposition testimony, merely operated "behind the scenes" of the *Craig,* litigation. *Plaintiff's Response,* Ex. 2 at 18, ln. 19–23. *See Auriemma v. Montgomery,* 860 F.2d 273, 278 (7th Cir.1988) (extra-judicial investigation by government attorneys defending government officials and entities not entitled to absolute immunity) (cited in *Snell,* 920 F.2d at 693). Under these circumstances, and because Defendants have offered no argument to the contrary, I conclude that Ms. Juarez's actions were not " 'necessary so that [Mr. Garcia could] fulfill his function as an officer of the court.'" *Pfeiffer,* 929 F.2d at 1490 (quoting *Snell,* 920 F.2d at 693).

Finally, Ms. Juarez's investigation was not public, and was apparently unknown to Plaintiff until the results were included in a public document filed by the Government in the *Craig* case. There were no judicial checks on Ms. Juarez's investigation. *See Burns v. Reed,* 500 U.S. 478, 496, 111 S.Ct. 1934, 114 L.Ed.2d 547 (identifying such "checks" as a factor to be considered in the functional analysis of whether absolute immunity should apply). Defendants have also failed to offer a credible argument why denying Ms. Juarez and Defendant DOE absolute immunity would increase the risk of future vexatious litigation. Because Ms. Juarez's actions were too distant from the judicial process, *see Snell,* 920 F.2d at 687 ("[t]he more distant a function is from the judicial process, the less likely absolute immunity will attach."), the "rare and exceptional character" of the doctrine of absolute immunity prevents me from applying it to Ms. Juarez and Defendant DOE.

The Supreme Court's decision in *Butz v. Economou* does not mandate a different result. *See Butz v. Economou,* 438 U.S. 478, 516–17, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). In *Butz,* the Supreme Court granted absolute immunity to an agency attorney who "conduct[ed] a trial and present[ed] evidence on the record to the trier of fact .... in an agency hearing." *Butz*

*v. Economou,* 438 U.S. at 516, 98 S.Ct. 2894. There was no question, therefore, that the agency attorney's actions in *Butz* were "intimately associated with the judicial process." *Imbler,* 424 U.S. at 430, 96 S.Ct. 984. Here, Ms. Juarez did not "conduct [the] trial and present evidence on the record to the trier of fact." Instead, according to her own deposition testimony, Ms. Juarez operated "behind the scenes" of the *Craig* litigation. *Plaintiff's Response,* Ex. 2 at 18, ln. 19–23. Accordingly, *Butz* is distinguishable on its facts. Under these circumstances, I will not grant Ms. Juarez and Defendant DOE absolute immunity.

ii.

[4] Defendants have not raised the question of qualified immunity. Accordingly, because "qualified immunity is an affirmative defense," *Barney v. Pulsipher,* 143 F.3d 1299, 1309 (10th Cir.1998), Defendants have waived it. It could be argued, however, that Defendants indirectly raised the qualified immunity defense by addressing absolute immunity in their Rule 12(c) motion. *See Scott v. Hern,* 216 F.3d 897, 908–9 (10th Cir.2000) ("Investigative acts that fall outside the scope of absolute immunity are accorded qualified immunity") (citing *Pfeiffer,* 929 F.2d 1484, at 1490 n. 6). Out of an abundance of caution, therefore, I address the question of qualified immunity. Because I dismiss Plaintiff's Privacy Act claim on statute of limitations grounds in Section III.C.2. below, I address the question of qualified immunity only with respect to Plaintiff's retaliation claims.

Under the doctrine of qualified immunity, Government officials are shielded from liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Once the defense is raised, the plaintiff assumes the burden of "(1) coming forward with sufficient facts to show that the defendant's conduct violated the law; and (2) demonstrating that the relevant law was clearly established when the alleged violation occurred." *Gehl Group v. Koby,* 63 F.3d 1528, 1533 (10th Cir.1995). "Where a plaintiff fails to demonstrate that a defendant's conduct violated the law, [the court] need not reach the issue of whether the law was clearly established." *Id.*

Here, Plaintiff has asserted sufficient facts from which a reasonable juror could conclude that Ms. Juarez's conduct violated the law. Indeed, as addressed more fully below, Plaintiff has satisfied his summary judgment burden under *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. 1817 of establishing retaliation in violation of Title VII and the ADEA. Moreover, there is no question that the law prohibiting retaliation against employees who exercise their rights under Title VII or the ADEA was clearly established in 1995. Accordingly, Ms. Juarez and Defendant DOE are not entitled to qualified immunity on Plaintiff's retaliation claims.

b.

[5] Mr. Garcia and Defendant DOJ, on the other hand, are absolutely immune for Mr. Garcia's decision to subpoena Plaintiff's marriage records and birth certificates of his children, and his response to Plaintiff's motion to compel in the *Craig* case. However malignant Mr. Garcia's tactics may have been, the subpoena and the response were "intimately associated" with the judicial process in *Craig.* Mr. Garcia undertook both actions as an advocate for the U.S. Government, *see Rex,* 753 F.2d at 843, and Judge Kane checked his behavior. Given the proximity of these actions to the judicial process, I conclude that Mr. Garcia is absolutely immune.

[6] Because Defendant DOJ is being sued for the actions of its agent, Mr. Garcia, Defendant DOJ is also entitled to absolute immunity. This is particularly true where, as here, Plaintiff was required to sue the head of the Department Justice in her official capacity. *See* 42 U.S.C.

§ 2000e–16 ("an employee ... may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant"); 5 U.S.C. § 552a(g)(1) ("Whenever any agency [fails to comply with the Privacy Act] ... the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection."). The cases cited by Plaintiff in support of his argument that Mr. Garcia's immunity does not necessarily extend to Defendant DOJ are factually and legally distinguishable insofar as they address Section 1983 claims against localities in which the employees were entitled to qualified immunity. Under these circumstances, Defendant DOJ is immune for Mr. Garcia's actions.

### C.

#### 1.

In their motion for summary judgment, Defendants argue that Plaintiff's Title VII and ADEA retaliation claims must be dismissed. Specifically, Defendants argue that Plaintiff cannot: (1) be considered an employee of either Defendant DOJ or Defendant DOE; (2) establish an adverse employment action; or (3) prove that Defendants' proffered reasons for their actions are pretextual. I address each argument in turn.

#### i.

▮ Even if Defendant DOJ were not absolutely immune for Mr. Garcia's actions, as I concluded above, Plaintiff cannot be considered Defendant DOJ's "employee" for purposes of Title VII and the ADEA. By arguing in his response to Defendants' summary judgment motion that he is an employee of the ubiquitous "U.S. Government," Plaintiff concedes in effect that he was never employed specifically by Defendant DOJ. Plaintiff fails to cite any authority, however, indicating that Defendant DOJ can be considered his employer under Title VII and the ADEA because he is employed by the "U.S. Government." Instead, Plaintiff states that "the employment relationship necessary for Title VII liability is a flexible concept, one that must be viewed liberally to effect the remedial intent of the statute." *Plaintiff's Response* at 13. Under Plaintiff's liberal "view[ ]," his Title VII and ADEA claims against Defendant DOJ should not be dismissed.

Title VII defines "employer" as "a person ... who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person...." 42 U.S.C. § 2000e(b). The ADEA includes the same definition except it applies to "a person ... who has twenty or more employees." 29 U.S.C. § 630(b). Both Title VII and the ADEA define "employee" as "an individual employed by an employer...." 42 U.S.C. § 2000e(f); 29 U.S.C. § 630(f).

The Tenth Circuit has held that the skeletal definitions of "employer" and "employee" provided in 42 U.S.C. § 2000e(b) and (f) should be fleshed out by applying common-law agency principles to the facts and circumstances surrounding the working relationship of the parties. *See Lambertsen v. Utah Dept. of Corrections,* 79 F.3d 1024, 1028 (10th Cir.1996). *See also Zinn v. McKune,* 143 F.3d 1353, 1357 (10th Cir.1998). Though the main focus of *Lambertsen*'s hybrid inquiry is whether and to what extent a putative employer has the "right to control the 'means and manner' of the worker's performance," *id.,* other factors inform the analysis, including

(1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment,

whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties. *Id.* Under *Lambertsen,* I must consider the totality of circumstances surrounding the working relationship between the parties; no single factor is determinative. *See id. See also Zinn,* 143 F.3d at 1357.

Here, Plaintiff cannot be considered an "employee" of Defendant DOJ under any reasonable interpretation of 42 U.S.C. § 2000e(f), 29 U.S.C. § 630(f), or common-law agency principles. Plaintiff has failed to allege any facts, other than Defendant DOJ's attorney-client relationship with Defendant DOE, that implicate the *Lambertsen* factors for assessing when an agency relationship exists. In addition, although plaintiffs can bring Title VII suits against "the head[s] of [ ] department[s], agenc[ies], or unit[s]," 42 U.S.C. § 2000e–16(c), such suits cannot be brought against the United States Government generally. *See* 42 U.S.C. § 2000e(b) ("[t]he term 'employer' ... does not include [ ] the United States"). No reasonable juror could conclude that because Plaintiff has been employed by an agency and a department within the U.S. Government, he is thereby employed by all such agencies and departments. No genuine issues of material fact remain on this question. Plaintiff has further failed to establish a prima facie case of retaliation against Defendant DOJ. Summary judgment on Plaintiff's Title VII and ADEA claims against Defendant DOJ is appropriate.

ii.

Defendant DOE argues that Plaintiff was not its employee when the alleged acts of retaliation occurred. It further asserts that because the alleged retaliation did not "arise out of Plaintiff's former employment at the Department of Energy" in the manner described by the Tenth Circuit in *Rutherford v. American Bank of Commerce,* 565 F.2d 1162, 1166 (10th Cir.1977), Plaintiff cannot bring a retaliation claim against Defendant DOE. I disagree.

In *Rutherford,* the Tenth Circuit held that former employees can bring claims for retaliation in violation of Title VII against their former employers. *See Rutherford,* 565 F.2d at 1165. In so holding, the Tenth Circuit quoted a Fifth Circuit decision describing three illustrative circumstances in which "[t]he possibility of retaliation [ ] is far from being 'remote and speculative' with respect to former employees," *Rutherford,* 565 F.2d at 1166 (quoting *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.,* 459 F.2d 303, 306 (5th Cir.1972)). There is no indication the *Rutherford* court intended the circumstances cited in *Hodgson* to generally restrict the circumstances in which a former employee can bring a retaliation claim, and Defendants cite no such authority. Indeed, the Tenth Circuit in *Berry v. Stevinson Chevrolet,* 74 F.3d 980, 985 (10th Cir.1996) described *Rutherford*'s holding, but neglected to identify any restrictions established by *Rutherford* on the rights of former employees to bring retaliation claims. *See generally Berry,* 74 F.3d at 985. In addition, after *Rutherford,* the Supreme Court held that retaliation claims can be brought by individuals against their former employers. *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). In *Robinson,* the Supreme Court placed no restrictions on when an individual can assert a valid retaliation claim against a former employer. *See Robinson,* 519 U.S. at 337, 117 S.Ct. 843. I will not dismiss Plaintiff's remaining retaliation claims based on Defendant DOE's unsupported interpretation of *Rutherford.*

iii.

■ Defendant DOE next argues that Plaintiff cannot establish an adverse employment action undertaken by Defendant DOE. Plaintiff responds that Ms. Juarez's

investigation and referral to the Office of Inspector General constitutes an adverse employment action. I agree with Plaintiff.

In *Berry*, the Tenth Circuit held "that the filing of charges against a former employee may constitute adverse action" because such an action "carries a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Berry*, 74 F.3d at 986. Although *Berry* involved criminal charges, filing charges with the Office of Inspector General that Plaintiff violated federal law while employed by the Federal Government can constitute an "adverse employment action." Plaintiff has established a genuine issue of material fact regarding whether the referral could "carr[y] a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Berry*, 74 F.3d at 986.

Summary judgment is also inappropriate on the question whether Ms. Juarez's investigation of Plaintiff prior to the referral "carrie[d] a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Id.* The allegations Ms. Juarez sought to corroborate could have resulted, if not time-barred, in criminal charges. I must liberally construe the anti-retaliation provisions of Title VII and the ADEA as they are remedial in nature. *See Rutherford*, 565 F.2d at 1165 ("A statute which is remedial in nature should be liberally construed."). In this light, Plaintiff has established a genuine issue of material fact regarding whether the investigation constituted an adverse employment action. For this reason, and because Defendant DOE does not dispute that Plaintiff can demonstrate a causal connection between the allegedly adverse action and his protected activity, *see Plaintiff's Response*, Ex. 2, at 70 (deposition testimony by Ms. Juarez that the only reason she collected the alleged evidence of Plaintiff's transgressions was because Plaintiff agreed to testify on behalf of Mr. Craig),

Plaintiff has established a *prima facie* case of retaliation.

iv.

■ As to the legitimate nondiscriminatory reasons for its actions, Defendant DOE alleges it pursued the investigation of Plaintiff because it believed Plaintiff's alleged transgressions reflected on his truthfulness and integrity. Defendant DOE also alleges that Ms. Juarez referred the allegations to the Office of Inspector General over ten years after the alleged violations of federal law, but within forty days of the protective order in *Craig*, because she did not possess evidence of Plaintiff's alleged transgressions until she undertook the investigation precipitated by the *Craig* case. Defendant DOE also argues that Plaintiff has failed to establish that these proffered reasons are pretextual, *and* that retaliation was the real reason for its actions.

Plaintiff responds that the delay between the alleged violations of federal law, and Defendant DOE's investigation and referral, raise questions regarding Defendant DOE's proffered reasons for both actions. Further, Plaintiff argues that a reasonable juror could conclude that Defendant DOE's contention that Plaintiff's alleged violations over ten years before the *Craig* case had a bearing on his general capacity for truthfulness is unworthy of belief. Finally, Plaintiff asserts that the close proximity of the protective order in *Craig* to the referral, and alleged inconsistencies in Ms. Juarez's testimony regarding the reasons for the referral, support an inference of pretext. I agree.

Contrary to Defendant's claim, Plaintiff need not prove at the summary judgment stage that the proffered reasons are pretextual, *and* that retaliation was the real reason for the challenged action. *See Defendants' Motion for Summary Judgment* at 24 (relying on *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Instead, demonstrating pretext allows a plaintiff to clear " 'the hurdle of summary judgment.' " *Randle*,

69 F.3d at 452 (quoting *Ingels,* 42 F.3d at 622 n. 3). *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000) (in clarifying *St. Mary's,* holding that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). As the Tenth Circuit has held, pretext can be shown by " 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.' " *Morgan,* 108 F.3d at 1323 (quoting *Olson,* 101 F.3d at 951–52 (further citation omitted)). Plaintiff has satisfied this burden. Accordingly, summary judgment on Plaintiff's Title VII and ADEA retaliation claims against Defendant DOE is inappropriate.

2.

▪▪▪▪▪ Defendants next argue that Plaintiff's Privacy Act claim must be dismissed because it is time-barred. Plaintiff responds that he was unaware of the alleged Privacy Act violations until he received a response to his request made under the Freedom of Information Act on June 9, 1997. I agree with Defendants.

Under the Privacy Act, "[a]n action ... may be brought ... within two years from the date on which the cause of action arises." 5 U.S.C. § 552a(g)(5). As with all waivers of sovereign immunity, the two year limitations period must be "strictly observed." *Stubbs v. U.S.,* 620 F.2d 775, 779 (10th Cir.1980). Under Tenth Circuit authority, the clock starts running when a plaintiff knew or had reason to know of an alleged Privacy Act violation. *See Bergman v. U.S.,* 751 F.2d 314, 316 (10th Cir. 1984), *cert. denied,* 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985). *See also Mangino v. Dep't of Army,* 1994 WL 55606, *1

(10th Cir.), *cert. denied,* 513 U.S. 908, 115 S.Ct. 275, 130 L.Ed.2d 193 (1994) (unpublished opinion) (citing *Bergman* for this rule).

Here, Plaintiff received the response to his motion for protective order in *Craig* on August 3, 1995. *See Defendants' Reply,* Ex. 2. Attached to that response were Plaintiff's divorce records, and a declaration from Ms. Scrivner indicating that she had obtained the records from the District Court for the City and County of Denver. *Id.* Ms. Scrivner's actions, and disclosing the information to Mr. Garcia, are the bases for Plaintiff's claim that Defendants allegedly violated both the "non-disclosure" and "direct acquisition" provisions of the Privacy Act. *See* 5 U.S.C. §§ 552a(b), (e)(2). As of August 3, 1995, therefore, Plaintiff was aware, or should have been aware, of the bases for his Privacy Act claim. Because Plaintiff did not file his initial complaint in this case until September 9, 1997, Plaintiff's Privacy Act claim must be dismissed for failure to comply with the two year statute of limitations.

Accordingly, IT IS ORDERED THAT:

(1) Defendants' Motion for Judgment on the Pleadings is GRANTED IN PART and DENIED IN PART;

(2) Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART;

(3) the Rule 12(c) and 56 motions of Janet Reno, Attorney General, Department of Justice are GRANTED and the action is DISMISSED against this Defendant with costs awarded this Defendant;

(4) the Rule 12(c) and 56 motions of Defendant Bill Richardson, Secretary of the Department of Energy are DENIED as to Plaintiff's Title VII and ADEA retaliation claims, and GRANTED as to Plaintiff's Privacy Act claim which claim is DISMISSED; and

(5) Plaintiff's motion to file a second amended complaint is DENIED AS MOOT.