**Clarence CARR, Plaintiff,**

v.

**ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION and Allegheny General Hospital, Defendants.**

**Civil Action No. 95–523.**

United States District Court,
W.D. Pennsylvania.

Aug. 9, 1996.

---

Diane Hernon Chavis, Homer L. Walton, Tucker, Arensberg, Pittsburgh, PA, for Plaintiff.

Jane Howard–Martin, Michael A. Pavlick, Kirkpatrick & Lockhart, Pittsburgh, PA, for Defendant Allegheny Health, Education and Research Foundation and Allegheny General Hospital.

## MEMORANDUM ORDER

CINDRICH, District Judge.

In this employment discrimination case, defendants and a potential witness have moved to quash a subpoena served on the witness. The witness is being referred to as John Doe to protect his confidentiality. Plaintiff ("Carr") believes Doe to have a history of substance abuse. Carr seeks detailed information about Doe's substance abuse and his treatment by defendants because Carr claims his own alcohol problem was considered less favorably than other similarly situated employees' because of his age and race. Doe and defendants ("movants") assert that Doe's deposition cannot be taken to obtain this information because doing so would reveal privileged information about him.

Movants only meritorious argument for restricting the typically expansive scope of discovery and quashing the subpoena is based on a privilege created by federal statute. Title 42 U.S.C. § 290dd–2(a)[1] states that:

> Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall ... be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

---

1. We will refer to 42 U.S.C. § 290dd–2 herein as "the statute."

Subsection (b) of section 290dd–2 essentially limits permissible disclosure to: (1) occasions when there is consent; absent consent, (2) in a medical emergency; (3) for scientific research; or (4) by court order. 42 U.S.C. § 290dd–2(b)(1), (2). In the latter instance, the only one that applies to this case, the court must make a finding of good cause before ordering disclosure.

> In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

Section 290dd–2(b)(2)(C).[2]

A court order is contemplated only under narrow circumstances, however. To guide application of the statute, subsection 290dd–2(g) directs the Secretary of Health and Human Services to

> prescribe regulations to carry out the purposes of this section. Such regulations may contain such definitions, and may provide for such safeguards and procedures, including procedures and criteria for the issuance and scope of orders under subsection (b)(2)(C) of this section, as in the judgment of the Secretary are necessary or proper to effectuate the purposes of this section, to prevent circumvention or evasion thereof, or to facilitate compliance therewith.

The Secretary has promulgated such regulations. 42 C.F.R. § 2.1–2.67 (1995). They state, among other things, that

> [t]he patient records to which these regulations apply may be disclosed or used only as permitted by these regulations and may not otherwise be disclosed or used in any civil, criminal, administrative, or legislative proceedings conducted by any Federal, State, or local authority.

42 C.F.R. § 2.13(a). The regulations go on to provide that "[a] court order under these regulations may authorize disclosure of confidential communications made by the patient to a program in the course of diagnosis, treatment, or referral for treatment *only if*" one of three conditions is met: (1) a threat to life or limb, or of child abuse; (2) prosecution of "an extremely serious crime" such as homicide, rape, or assault; or (3) litigation "in which the patient offers testimony or other evidence pertaining to the content of the confidential communications." *Id.* § 2.63(a)(1), (2), (3) (emphasis added). Finally and importantly, the regulations define "records" as "any information, whether recorded or not, relating to a patient received or acquired by a federally assisted alcohol or drug program."[3] *Id.* § 2.12. Anyone who violates the statute or corresponding regulations is subject to the criminal penalty of a fine. 42 U.S.C. § 290dd–2(f); 42 C.F.R. § 2.4. In sum, the sweep of the statute, the broad discretion delegated to the Secretary of Health and Human Services, and the provision for penalties make unmistakable Congress's intent to vigorously protect the range of records about substance abuse. *Whyte v. Connecticut Mutual Life Insurance Co.,* 818

**2.** A summary of the legislation that resulted in section 290dd–2, referred to as an "extremely tangled web of legislative history," is set out in *Smalls v. Fallon,* 1995 WL 5847, *3 (S.D.N.Y.). For our purposes, the useful information from this summary is that predecessor statutes for confidentiality of alcohol abuse records (formerly 42 U.S.C. § 290dd–3) and drug abuse records (formerly 42 U.S.C. § 290ee–3) have been combined in section 290dd–2. Though section 290dd–2 was amended in 1992, the 1995 Code of Federal Regulations still confusingly refers to the former statutes. See 42 C.F.R. §§ 2.1–2.5; *Smalls,* 1995 WL 5847 at *3 n. 22.

**3.** Even acknowledging Congress' generous grant of regulatory power to the Secretary to "effectu-

ate the purposes of" and "facilitate compliance" with section 290dd–2, we find it difficult to square the statutory term "record" with a regulatory definition that includes information "whether recorded or not." 42 C.F.R. § 2.11. Information not recorded would seem to consist of mental processes. While such information undoubtedly may be acquired, stored, processed, and transmitted without taking tangible form, we doubt that such information can rightly be called a "record," and therefore be consistent with the term Congress itself uses in the statute. *See also* Black's Law Dictionary (6th ed. 1990) at 1273 (all definitions refer to tangible things).

F.2d 1005, 1009 (1st Cir.1987) ("Congress recognized that absolute confidentiality is an indispensable prerequisite to successful alcoholism research," and "is necessary to insure successful alcoholism treatment.").

That being established, the motion to quash requires us to lay out the scope of the statute fairly precisely. The meaning of "record" is the fulcrum of this dispute. The statute throughout speaks of the confidentiality of "records." Section 290dd–2(a), (b)(1), (b)(2), (c), (d), and (e). One of the dictionary definitions of record, and we believe the commonly understood meaning, is "some*thing* that recalls or relates past events." Webster's Ninth New Collegiate Dictionary 984 (1990) (emphasis added). The question thus raised is whether the statute and the regulations encompass a deposition, where, assuming for the sake of argument that no documents are at issue, oral testimony is sought from the subject himself. Are questions put directly to Doe about the facts of his substance abuse, and the bare facts of the manner in which defendants dealt with it, covered by section 290dd–2? There is no authority on this issue from the United States Court of Appeals for the Third Circuit, and very little relevant treatment even in the district courts, which might offer guidance.

To determine the application of the privilege to Doe's deposition, we look first, of course, to the statute itself. *Licata v. U.S. Postal Service*, 33 F.3d 259, 261 (3d Cir. 1994). In addition to providing for the confidentiality of "records," 290dd–2(a), in the subsection on permissible disclosures Congress refers to "the content of any record," 290dd–2(b)(1), and "the content of such record," 290dd–2(b)(2). Thus, Congress has expressly safeguarded not just records about substance abuse, but the *contents* of records about substance abuse. This is a critical distinction in the case at hand where a party is seeking oral testimony.

**4.** Movants in fact invoke Rule 26 in their motion.

**5.** The critical fact of Doe's identity normally would be protected by the statute. Carr states that he discovered Doe's identity as a substance abuse because it was common knowledge throughout the hospital. Plaintiff's Response to

The Secretary, as stated above, defines "record" as "any information ... relating to a patient received or acquired by a federally assisted alcohol or drug program." 42 C.F.R. § 2.11. In describing what information a court may authorize disclosed, the regulations refer to "confidential communications made by a patient to a program in the course of diagnosis, treatment, or referral for treatment." *Id.* § 2.63(a). This latter characterization is notably narrower than any other description of protected information found in the statute or regulations. It protects only confidential information, travelling only in one direction, from patient to program, and only for diagnosis, treatment, or referral. The broadest characterization of information protected by the statute appears to be the term "content of any record" found in subsection 290dd–2(b).

With these conclusions in mind, we make the following rulings:

■ 1. Pursuant to 42 U.S.C. § 290dd–2, Carr is prohibited from discovering any information about any person that is contained in any record held by defendants' substance abuse treatment program. Carr's circumstances do not fit any of the exceptions under which disclosure of such information is authorized. 42 U.S.C. § 290dd–2(b); 42 C.F.R. § 2.63.

■ 2. Carr may take Doe's deposition under the following conditions. Pursuant to Federal Rule of Civil Procedure 26(c), the court will also consider the Joint Motion to Quash Subpoena as a motion for protective order[4], and direct that under no circumstances shall Doe's identity be revealed during the deposition or in any court filing.[5] This is done to prevent embarrassment to Doe not pursuant to, but rather in the spirit of, the statute. In this vein we note that Carr's counsel has at times not exercised the requisite care in protecting confidential information in this case, at one point attaching a letter containing Doe's name to a publicly

Joint Motion to Quash Subpoena, Doc. No. 28, ¶ 15. He also claims to have received certain information about Doe's treatment directly from Doe himself. *Id.* As to the discovery of Doe's identity, therefore, we take the case as we find it.

accessible pleading. Carr claims that Doe's identity and his alleged drug problem are commonly known by his fellow employees. Nonetheless, the parties and counsel are advised that the court takes seriously the confidentiality protections afforded by Congress under the statute and by the court under its protective orders, and will act accordingly if notified about further transgressions. Counsel should be mindful that what is relevant is Doe's *condition,* his similarity to plaintiff, and the treatment received by Doe at the hands of defendant, as related to his employment. For these purposes his identity is of no consequence.

3. Doe may be questioned about historical facts that exist independently of records related to his substance abuse treatment or rehabilitation. In his response to the motion to quash Carr sets out some examples of the questions he intends to ask. We will rule on these, which should set the course for a *minimally disrupted* deposition.

1. Were you employed by defendants in their Dietary Department?

   Permitted; seeks background information.

2. Did you have a drug and alcohol problem?

   Denied as stated; a *close question,* but edges into diagnosis, prognosis, or treatment information protected by the statute. A permissible variation would be whether Doe ever reported to work while intoxicated. The latter phrasing relies on plain fact.

3. Did defendants take disciplinary action against you for stealing money from their Dietary Department?

   Permitted; seeks background information.

4. What type of disciplinary action was taken against you?

   Permitted; seeks background information.

5. Did you attend a rehabilitation program for alcohol and/or drug abuse? When? Where? How long?

   Denied; seeks treatment information.

6. Was your employment with defendants reinstated after completion of the rehab program? When? What was your job title or position?

   Denied as stated. A permissible variation would be to ask the witness about his employment history, which could include dates and titles.

7. Were you required to sign a Back to Work Agreement?

   Denied; seeks information about treatment or rehabilitation.

8. Did you have a relapse whereby you were placed in another rehab program?

   Denied; seeks information about rehabilitation or treatment?

9. Was your employment with defendants reinstated after completion of the rehab program?

   Denied as stated; see number 6.

10. Did you have to sign a Back to Work Agreement at any time throughout the course of your employment with defendants?

    Denied, unless any such agreement does *not* involve rehabilitation for substance abuse.

In short, factual events about Doe's *employment* may be inquired into. The information contained in a typical *personnel* file should be discoverable. Doe should not be able to immunize such facts from ever being disclosed simply because they were at some point placed in a rehabilitation record. It would be an absurd result to say that Doe's home address, for example, is forever privileged from disclosure without his consent simply because it appears in his substance abuse records.[6]

---

6. As stated by the court in *Smalls v. Fallon,*

> There is nothing in the federal confidentiality statute to indicate that a [person] by entering a treatment program casts a cloak of secrecy over everything he may have done while impaired. . . .

> Any other result would transform a statute designed to encourage [persons] to seek treatment for substance abuse into a shield against liability for civil wrongs committed while impaired. . . . [a person] cannot unilaterally deprive [a party] of that evidence by discussing facts in a privileged communication.

We presume that Doe's counsel will familiarize herself with his substance abuse records to interpose appropriate objections to questions whose answers may be drawn *only* from such records. Given the subject of Carr's claims and what we know about the case thus far, however, we also presume that this leaves Carr little room for questions about the subjects in which he is largely interested, that is, the terms of continued employment of other substance abusers.

The court recognizes a tension at the boundary of questions which are permissible at the deposition. Having had the less than pleasant task of refereeing the parties' previous discovery disputes on at least four occasions, however, *we do not expect further disagreement over these issues given the guidance in this order.*

 If this approach begins to take the semblance of a loophole in the broad protection afforded by the statute, that it is because the language of the statute and regulations, though broad, has limits. Information not part of the contents of rehabilitation records and which does not concern "the identity, diagnosis, prognosis, or treatment," section 290dd–2(a), is not privileged. It is thus discoverable under Federal Rule of Civil Procedure 26. Such information should not be considered a disclosure under the statute; rather, it should be considered outside the scope of the statute.

Moreover, while the statute does not permit a balancing of interests, there are at least two factors pressing strongly against expansion of the privilege beyond the strict limits of Congress's own words. Congress and our appellate courts teach us that eliminating race discrimination is essential to the health of our society, and have supplied powerful tools to that end. While race discrimination is typically fought statutorily through Title VII, it has roots in the Equal Protection clause of the Constitution. This case, more than any other uncovered by our research, presents a direct conflict between the goals of rehabilitating drug abusers and remedying race discrimination. Indeed, the clash of these interests could hardly be sharper. Doe

is not a party, but simply a witness, who has not placed his treatment at issue in any way. This peripheral involvement in the case is set against allegations by an African American that the types of rehabilitation conditions offered him differed from those afforded to others based on his race, and age. Thus, Carr's ability to prove his case almost certainly rests on obtaining this information. He would unquestionably be entitled to such information if not for the statute.

Second, the typical scope of federal discovery is well-known and extremely broad. Fed.R.Civ.P. 26(b)(1). Privileges against disclosure are few and narrow. Rules and precedent tilt the courts against closing off access to relevant information normally accessible through discovery.

The Joint Motion to Quash Subpoena (Doc. No. 26) is GRANTED in part and DENIED in part, and Doe's deposition may proceed in accordance with the foregoing.

SO ORDERED.

---

1995 WL 5847 at *10–11. This is a sensible approach, consistent with our reading of the

statute, and it applies to the situation of shielding acts of discrimination which are at issue here.