**CENTER FOR LEGAL ADVOCACY, d/b/a The Legal Center for People with Disabilities, a/k/a The Legal Center, Colorado's Protection and Advocacy System, P & A System, Plaintiff,**

v.

**Michael EARNEST, M.D., in his official capacity as Medical Director of Quality Review and Improvement, Patricia Gabow, M.D., in her official capacity as Medical Director and Chief Executive Officer, Denver Health and Hospital Authority, a/k/a Denver Health Medical Center, a/k/a DHMC, Defendants.**

No. Civ.A.01–WY–642–CB.

United States District Court, D. Colorado.

Feb. 22, 2002.

Terry Lee Fowler, Mark Joseph Ivandick, Legal Center for the Disabled, Denver, CO, for plaintiff.

Sharon E. Caulfield, Caplan & Earnest, L.L.C., Boulder, CO, for defendant.

## ORDER

BRIMMER, District Judge.

Plaintiff, Center For Legal Advocacy ("CLA"), seeks a permanent injunction and declaratory relief granting it unfettered access to certain medical records, pursuant to the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. § 10801 *et seq.*, and the Protection and Advocacy of Individual Rights Act ("PAIR"), 29 U.S.C. § 794e. Defendants dispute Plaintiff's asserted entitlement, claiming they are precluded from releasing the information sought without ensuring the privacy safeguards imposed by the Public Health Service Act. 42 U.S.C. § 290dd–2 ("PHSA"). Currently before the Court are: 1) Plaintiff's Objections to Order of September 24th Denying it a Preliminary Injunction; 2) Defendant's motion for extension of time to respond to Plaintiff's Objection to Order of September 24, 2001 Denying it a Preliminary Injunction; 3) Plaintiff's Federal Rule 56 Motion for Partial Summary Judgment; 4) Plaintiff's Federal Rule of Civil Procedure 12(c) Motion for Judgment on the Pleadings; and 5) Defendants' Motion for Summary Judgment. Upon reading the briefs, hearing oral argument, and being fully advised of the premises, the Court **FINDS** and **ORDERS** as follows:

### Background

On or about January 2, 2001, the Plaintiff, Center for Legal Advocacy, was notified of the death of an unidentified homeless person, referred to in Plaintiff's pleadings as D. Doe, at Denver Health Medical Care. D. Doe was admitted to Defendants' facility for treatment of acute alcohol intoxication and gash over his eyebrow (D. Doe was admitted with a reported blood alcohol level of .372%). The death allegedly resulted from acute alco-

hol intoxication and/or the improper use of restraints and tranquilizers by hospital staff. In attempting to gather information on the death of D. Doe under its statutory mandate Plaintiff alleges that Defendants have illegally blocked access to D. Doe's hospital records. Plaintiff contends Defendants are required to produce all records related to D. Doe's hospitalization and treatment under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. § 10801 *et seq.*, and the Protection and Advocacy of Individual Rights Act ("PAIR"), 29 U.S.C. § 794e (incorporating 42 U.S.C. § 6041, *et seq.*). Plaintiff is currently seeking a permanent injunction against all future acts of Defendants which would have the effect of denying Plaintiff's right of access to facilities, records, employees, and residents. Plaintiff also seeks a declaratory judgment affirming its access rights under PAIMI, and PAIR.

Defendants contend that they have complied with the provisions of PAIMI and PAIR to the extent that they are able, but are precluded from divulging D. Doe's alcohol treatment records under the privacy provisions contained in the Public Health Service Act, 42 U.S.C. § 290dd–2 ("PHSA"). Defendants argue that Plaintiff has refused to enter into agreements allowing for limited production of documents subject to non-disclosure restrictions. Additionally, Defendants have counterclaimed for a declaratory judgment stating that they are not required to produce records to the extent such production would violate the confidentiality requirements of the PHSA and accompanying regulations. Under the declaratory judgment sought by Defendants, CLA would have to demonstrate that the individual or a personal representative of the individual whose records are at issue has consented, obtain a court order in each instance, or enter into a written confidentiality agreement with Denver Health Medical Center.

By Order dated September 24, 2001, this Court denied Plaintiff's Motion for Preliminary Injunction. However, the Court provided that Defendants "shall make available to Plaintiff the records sought in this case under the terms and conditions of Defendants' Access and Confidentiality Agreement." The Court further denied Plaintiff's Motion Requesting Reconsideration of and Recision of Protective Order to Seal Exhibits and vacated, to the extent necessary to give effect to the Court's September 24, 2001 Order, the Magistrate's Protective Order to Seal Exhibits. Finally, the Court denied Plaintiff's Motion to Dismiss Defendants' Counterclaims.

## Analysis

### 1) Plaintiff's Objections to Order of September 24th Denying it a Preliminary Injunction

The first issue before the Court is Plaintiff's Objections to Order of September 24th Denying it a Preliminary Injunction in which the Plaintiff requested that the Court reconsider its Order of September 24, 2001. Plaintiff did not file this objection/motion to reconsider until October 9, 2001, nor did Plaintiff state by what authority this motion was brought.

■ Although a motion to reconsider is not formally recognized by the Federal Rules of Civil Procedure, such a motion is generally construed in one of two ways. *Federal Trade Commission v. Skybiz.com, Inc.*, 2001 WL 1673635, *1 (N.D.Okla.2001) (citing *Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir.1995)). If the motion is filed within ten days of the district court's entry of judgment (or in this case entry of the Order denying the preliminary injunction), it is treated as a rule 59(e) motion to alter or amend judgment. *Id.* However, as here, when the motion is filed more than ten days after entry of judgment, it is treated as a Rule 60(b) Motion for relief from judgment. *Id.*

■ Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) evidence which was previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. John Does, I–XVI*, 204 F.3d 1005, 1012 (10th Cir.2000). Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. *Id.* In support of its current motion for reconsideration, Plaintiff claims that the Court made a number of legal as well as factual errors.

First, Plaintiff argues that no evidence supports the Court's statement that "D. Doe was admitted for treatment of alcoholism, depression, and bipolar disorder," as Plaintiff claims that having a mental illness, which it admits D. Doe had, and receiving treatment for it are two separate things. Thus, Plaintiff claims that these findings were utterly unsupported, "arbitrary, capricious, whimsical and manifestly unreasonable." As will be discussed in greater detail in the section addressing Defendants' Motion for Summary Judgment, D. Doe, an injured and severely intoxicated alcoholic, was admitted to Defendants' facility for treatment and diagnosis of his alcohol abuse problems as defined by the PHSA regulations. This is shown by the fact that D. Doe received treatment due to an alcohol abuse related injury in Defendants' emergency facility and such treatment may be described as a first step in obtaining treatment and diagnosis from Defendants' alcohol treatment facilities. Thus, there is adequate support for the Court's statement in its Order of September 24, 2001.

■ Second, Plaintiff contends that the Court, by including Defendants' "Access Agreement" as part of its September 24, 2001 Order, effectively granted Defendants' counterclaim for declaratory relief. Yet, by adopting the Defendants' "Access Agreement," the Court did not grant Defendants' Counterclaim for declaratory relief. The Court merely incorporated the "Access Agreement" as a way to balance the conflicting obligations of the parties, which allowed the Plaintiff to receive information while permitting Defendants to maintain their confidentiality obligations until the matters of permanent injunction and declaratory relief could be resolved. Additionally, the "Access Agreement" allows Plaintiff to dispute the application of the confidentiality regulations in any enforcement action brought by Plaintiff on behalf of D. Doe. Therefore, the "Access Agreement" did not grant relief in favor of Defendants' counterclaim, and it did not prejudice the Plaintiff.

■ Lastly, Plaintiff claims that the Court erred in applying 42 U.S.C. § 290–dd2 and 42 C.F.R. § 2 *et seq* to the present case, and that the Court ignored the clear intent of PAIMI to allow prompt death investigations by agencies such as the Plaintiff. The Court's reliance on the above statutes and its accompanying legal analysis was utilized to demonstrate that the Plaintiff was not likely to succeed on the merits, as required in a Motion for Preliminary Injunction. *See generally ACLU v. Johnson*, 194 F.3d 1149, 1155 (10th Cir.1999).[1] Additionally, as will be discussed in the section addressing Defendants' Motion for Summary Judgment, the

---

**1.** To secure a preliminary injunction, the moving party must demonstrate:
(1) the movant will suffer irreparable harm unless the injunction issues; (2) there is a substantial likelihood the movant ultimately will prevail on the merits; (3) the threat-

ened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and (4) the injunction would not be contrary to the public interest. *ACLU v. Johnson*, 194 F.3d 1149, 1155 (10th Cir.1999)

Court's analysis and incorporation of the above statutes was the proper application and interpretation of these statutes and regulations to the facts of this case.

Therefore, for the aforementioned reasons, Plaintiff's Objection to Order of September 24, 2001 Denying it a Preliminary Injunction, requesting reconsideration of such Order, is hereby **DENIED**.

### 2) Defendant's motion for extension of time to respond to Plaintiff's Objection to Order of September 24, 2001 Denying it a Preliminary Injunction

Defendant's motion for extension of time to respond to Plaintiff's Objection to Order of September 24, 2001 Denying it a Preliminary Injunction is hereby **DENIED AS MOOT**.

### 3) Plaintiff's Federal Rule 56 Motion for Partial Summary Judgment

██ Plaintiff's Federal Rule 56 Motion for Partial Summary Judgment is denied, as Plaintiff is merely reiterating a point of law. In its Motion for Partial Summary Judgment, Plaintiff argues that as a protection and advocacy system the Plaintiff, as a matter of law, is the final arbiter of probable cause to conduct an investigation of abuse under PAIMI. The Court recognizes and agrees with the Plaintiff that under PAIMI, protection and advocacy systems such as the Plaintiff are "the final arbiter of probable cause for the purposes of triggering its authority to access all records for an individual that may have been subject to abuse or neglect." *Arizona Center For Disability Law v. Allen,* 197 F.R.D. 689, 693 (D.Ariz.2000) (citing 42 U.S.C. § 6042(a)(2)(I)(ii); 42 U.S.C.

§ 10805(a)(4)(B)). The Court also recognizes that a determination of probable cause made by the protection and advocacy system will not be reevaluated by the state or service provider merely because the state or service provider disagrees that probable cause exists. *Arizona Center For Disability Law,* 197 F.R.D. at 693. Thus, the ability of protection and advocacy systems such as the Plaintiff to make probable cause determinations which trigger investigations pursuant to PAIMI is not doubted by this Court.

However, as stated in the Court's September 24, 2001, Order although protection and advocacy groups such as the Plaintiff are the determiners of probable cause thereby triggering access to records, the ability to obtain unfettered access to such records may be less that absolute. Thus, there are potential limitations on Plaintiffs access to records for individuals who may have been subject to abuse or neglect and these limitations will be clearly delineated in the section addressing Defendants' Motion for Summary Judgment.

Therefore, for the aforementioned reasons, the Court agrees with the Plaintiff that it has the authority under PAIMI, to determine probable cause of abuse or neglect of an individual triggering an investigation under PAIMI. However, as this is merely a recognized point of law, the Court hereby **DENIES** Plaintiff's Motion For Partial Summary Judgment.

### 4) Plaintiff's Federal Rule of Civil Procedure 12(c) Motion for Judgment on the Pleadings

██ In its Federal Rule of Civil Procedure 12(c)[2] Motion for Judgment on the

---

**2.** Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to

and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. F.R.Civ.P. 12(c).

Pleadings, Plaintiff argues that the Court should dismiss Defendants' counterclaim and grant, as a matter of law, the injunctive and declaratory relief in Plaintiff's favor. In support of this argument, Plaintiff claims that because the Defendants are relying on the confidentiality requirements in 42 U.S.C. § 290dd–2, PHSA, and 42 C.F.R. § 2 *et seq,* the Court, as a matter of law, should find that these regulations do not apply to the Plaintiff's investigation of the death of D. Doe, as Plaintiff is performing a "death investigation" in accordance with 42 C.F.R. § 2.15(b)(1).[3] Defendants claim that Plaintiff has misconstrued the exception contained in 42 C.F.R. § 2.15(b)(1), as the "vital statistics" exception only applies to coroners in the performance of their duties.

■ A Rule 12(c) motion for judgment on the pleadings is reviewed under the standard applicable to a Rule 12(b)(6) motion to dismiss. *Villescas v. Richardson,* 124 F.Supp.2d 647, 650 (D.Colo.2000) (citing *McHenry v. Utah Valley Hosp.,* 927 F.2d 1125, 1126 (10th Cir.1991)). Thus, dismissal is appropriate only if it appears that a non moving party can prove no set of facts under which he would be entitled to relief. *Villescas,* 124 F.Supp.2d at 650 (citing *Coosewoon v. Meridian Oil Co.,* 25 F.3d 920, 924 (10th Cir.1994)).

In the present case, Plaintiff seeks a ruling of law concerning the potential application of an exemption to the confidentiality regulations placed upon Defendants. However, the issues before the Court involve the interpretation of the confidentiality requirements contained in 42 U.S.C. § 290dd–2 (PHSA) and its accompanying regulations, 42 U.S.C. § 2 *et seq,* in conjunction with the access statutes of 42 U.S.C § 10801 *et seq* (PAIMI) and 29

U.S.C. § 794e (PAIR). Another potential issue may involve the confidentiality requirements imposed upon the Plaintiff pursuant to the PAIMI regulations contained in 42 C.F.R. § 51.45. In light of these issues Plaintiff has failed to fulfill its burden of showing that Defendants can prove no set of facts in support of their counterclaim. Furthermore, Plaintiff has failed to demonstrate as a matter of law, or as a matter of fact, that the vital statistics exemption contained in 42 C.F.R. § 2.15(b) applies to their investigation of Defendants' actions in this particular case.

The vital statistics' exemption states: "These regulations [42 C.F.R. § 2 *et seq* ] do not restrict the disclosure of patient identifying information relating to the cause of death of a patient under laws requiring the collection of death or other vital statistics or permitting inquiry into the cause of death." 42 C.F.R. § 2.15(b)(1). This exemption was included as a result of numerous complaints made by coroners that the requirements of written consent, by a personal representative or next of kin, unreasonably interfered with their obligation under state and local laws to inquire into the cause of death of patients. 48 Fed.Reg. 38758 at 38765 (Aug. 25, 1983). Thus, it appears that the intent of this regulation was to afford greater leeway to coroners in the performance of their duties, and not to allow protection and advocacy agencies such as the Plaintiff to circumvent the confidentiality requirements of the PHSA. Additionally, it should be noted that if Plaintiff's argument were accepted, that the vital statistics' exemption applied to its current investigation of D. Doe's death, Plaintiff would be in the position of being able to receive this information, yet Plaintiff

---

**3.** 42 U.S.C. § 2.15(b) states: "Vital statistics. These regulations do not restrict the disclosure of patient identifying information relating to the cause of death of a patient under laws requiring the collection of death or other vital statistics or permitting inquiry into the cause of death."

would still be limited by the confidentiality requirements placed upon protection and advocacy systems contained in 42 C.F.R. § 51.45.[4] In either event, the Court is forced to interpret two conflicting statutes—one which appears to allow disclosure—and one which appears to restrict disclosure.

Therefore, for the aforementioned reasons, Plaintiff's Federal Rule of Civil Procedure 12(c) Motion for Judgment on the Pleadings is **DENIED.**

### 5) Defendants' Motion for Summary Judgment

In their Motion for Summary Judgment, Defendants argue that Plaintiff's claims should be dismissed, that Defendants' counterclaim for declaratory judgment should be granted, and Rule 11 sanctions should be imposed on the Plaintiff. In support of this argument, Defendants claim that pursuant to the Public Health Service Act 42 U.S.C. § 290dd–2, and the accompanying regulations at 42 C.F.R. § 2 *et seq*, they are prohibited from releasing D. Doe's alcohol records to the Plaintiff, unless the Plaintiff complies with certain procedures to ensure the confidentiality of D. Doe's records. In response, Plaintiff argues that the provisions in PAIMI and PAIR that provide access for protection and advocacy groups to the records of individuals such as D. Doe trump the confidentiality provisions contained in the PHSA. Plaintiff also claims that even if the confidentiality provisions in the PHSA trump and thus limit the access provisions of PAIMI and PAIR, the confidentiality provisions contained in the PHSA do not apply in this case as Defendants are not a

program or facility under the PHSA regulations, and D. Doe was not a patient under these same regulations.

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jenkins v. Wood,* 81 F.3d 988, 990 (10th Cir.1996) (quoting Fed.R.Civ.P. 56(c)). The court views the evidence in the light most favorable to the party opposing summary judgment. *Jenkins,* 81 F.3d at 990.

The party moving for summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the nonmoving party's claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to establish the existence of an essential element of the claims on which they bear the burden of proof at trial. *Id.* And "[w]hile the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the nonmovant's claim." *Jenkins,* 81 F.3d at 990.

To satisfy this burden, the nonmoving party must go beyond the pleadings and designate specific facts to make a showing that there is a genuine issue for trial. *Ford v. West,* 222 F.3d 767, 774 (10th Cir.2000) (quoting *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1128 (10th Cir.1998)). In order to successfully resist summary judgment, there must be suffi-

---

**4.** Specifically 42 C.F.R. § 51.45 provides that protection and advocacy systems such as the Plaintiff must "keep confidential all records and information ... pertaining to: clients to the same extent as is required under Federal or State laws for provider of mental health

services." This confidentiality requirement also requires protection and advocacy systems to have written policies governing access to, storage of, duplication and release of client records. 42 C.F.R. § 51.45(a)(2).

cient evidence on which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). And "[t]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir.1997).

### Analysis

In the present case, the initial inquiries are whether Defendants are bound by the PHSA, that is was D. Doe a patient as defined under the PHSA and accompanying regulations, and whether Defendants are a program or facility under the same act and regulations. The next, and perhaps most important inquiry, is the relationship between the access statutes of PAIMI and PAIR with the confidentiality statutes and regulations contained in the PHSA.

### A. Meaning of Patient

 The first threshold question is whether D. Doe was a patient within the meaning of 42 U.S.C. § 290dd–2, PHSA. The pertinent regulations define "patient" as "any individual who has applied for or been given diagnosis or treatment for alcohol or drug abuse at a federally assisted program." 42 C.F.R. § 2.11 ¶ 6. The issue then turns on whether D. Doe was given "diagnosis" or "treatment" for "alcohol abuse." "Diagnosis means *any* reference to an individual's alcohol or drug abuse or to a condition which is identified as having been caused by that abuse which is made for the purpose of treatment or referral for treatment." 42 C.F.R. § 2.11 ¶ 3 (emphasis added). "Treatment means the management and care of a patient suffering from alcohol or drug abuse, a condition

which is identified as having been caused by that abuse or both, in order to reduce or eliminate adverse effects upon the patient." 42 C.F.R. § 2.11 ¶ 14. Finally the regulations define alcohol abuse as "the use of an alcoholic beverage which impairs the physical, mental, emotional, or social well-being of the user." 42 C.F.R. § 2.11 ¶ 1.

In the present case, it is clear that D. Doe was receiving treatment at Defendants' facility for a condition caused by alcohol abuse. When admitted to Defendants' facility, D. Doe had a blood alcohol level of .372% and he was treated for acute alcohol intoxication and a laceration above the eye. It is apparent that D. Doe's severe intoxication and accompanying injuries were the reasons for his admission to Defendants' facility. Thus, D. Doe was provided treatment within the meaning of the regulations as the condition necessitating D. Doe's treatment was caused by alcohol abuse. Additionally, even if D. Doe did not make a formal application for diagnosis, he was certainly given diagnosis. Considering the definition of diagnosis in the pertinent regulations, the staff at Defendants' facility certainly made "any reference" to D. Doe's "alcohol abuse" for purposes of his treatment at the facility, as the attending physician stated that, D. Doe had a laceration near his eyebrow, and was intoxicated and abusive. The same attending physician also noted that in addition to being intoxicated, D. Doe may have taken anti depressant medication, and there were concerns as to whether D. Doe was trying to injure himself. It is apparent that the attending physician's reference to D. Doe's intoxication and alcohol abuse was in an effort to aid and control an intoxicated and abusive D. Doe. Therefore, it is clear that this reference was made for purposes of diagnosis within the meaning of the relevant statute. Finally, such a reference to D. Doe's condition could have been used

for D. Doe's potential referral to Defendants' Alcohol Treatment Program.

### B. Meaning of Alcohol Abuse Program/Facility

■ The confidentiality requirements of PHSA, apply to records "which are maintained in connection with the performance of any federally assisted alcohol and drug abuse program." 42 C.F.R. § 2.3(a) (1988). Thus, to determine whether the Defendants' facility is a federally assisted alcohol abuse program it is necessary to look to the regulations accompanying the PHSA. These regulations state that:

Program means:

(a) An individual or entity (other than a general medical care facility) who holds itself out as providing, and provides, alcohol or drug abuse diagnosis, treatment or referral for treatment; or

(b) An identified unit within a general medical facility which holds itself out as providing, and provides, alcohol or drug abuse diagnosis, treatment or referral for treatment; or

(c) Medical personnel or other staff in a general medical care facility whose primary function is the provision of alcohol or drug abuse diagnosis, treatment or referral for treatment and who are identified as such providers.

42 C.F.R. § 2.11.

Defendants' emergency facility which D. Doe was admitted to is no doubt an alcohol abuse program in that it holds itself as providing and does in fact provide drug abuse diagnosis, treatment or referral for treatment services. This is demonstrated by the fact that patients who receive their initial care from the Defendants' emergency room are often referred to the drug and alcohol treatment program also operated by Defendants. Dep. Nancy Higgins, P. 31–34. Further evidence of the integrated nature between Defendants' emergency department and its drug and alcohol

treatment program is the fact that the emergency department has access to the records held by the drug and alcohol programs. Dep. Nancy Higgins P. 23.

■ Defendants' emergency facility is a federally assisted alcohol abuse program, in that it is closely integrated with Defendants' drug and alcohol abuse programs, and it provides a method for diagnosis and treatment of alcohol abuse for individuals in the first instance. A hospital emergency room, while obviously also performing functions unrelated to drug abuse, serves as a vital first link in alcohol abuse diagnosis, treatment, and referral. *U.S. v. Eide*, 875 F.2d 1429, 1436 (9th Cir.1989). It is apparent that many alcohol abusers are first diagnosed as having an alcohol abuse problem, and are first given treatment or a referral for their alcohol abuse at a hospital emergency room in conjunction with an alcohol related injury or accident (as was D. Doe in this case). *See generally Id.*

Therefore, Defendants' facility is a federally assisted alcohol abuse program, and the records sought by Plaintiff fall under the confidentiality requirements of the PHSA. However, the question remains, is Plaintiff's access to the records and information of D. Doe in Defendants' possession limited by the confidentiality requirements of 42 U.S.C. § 290dd–2.

### Conflict Between PAIMI, PAIR and PHSA

■ In determining the apparent conflict between PAIMI's broad access provisions and PHSA's confidentiality requirements, the Court notes that "when Congress has enacted two statutes which appear to conflict, we must attempt to construe their provisions harmoniously." *United States v. Colorado*, 990 F.2d 1565, 1575 (10th Cir.1993). In the present action, both statutes may be construed harmoniously in that access to the requested documents may be allowed as long as the

proper procedures are followed to ensure and maintain the confidentiality of information contained within such records.

Under PAIMI, protection and advocacy systems such as the Plaintiff have the authority to "investigate incidents of abuse and neglect of individuals with mental illness if there is probable cause to believe that the incidents occurred," and shall have access to all records of any individual where there is probable cause to believe that such individual has been subject to abuse or neglect. 42 U.S.C. § 10805(a) and 42 C.F.R. § 51.41(b). While it is universally recognized that groups like the Plaintiff are "the final arbiter of probable cause for the purpose of triggering its authority to access all records for an individual that may have been subject to abuse or neglect," *Arizona Center for Disability Law v. Allen*, 197 F.R.D. 689, 693 (D.Ariz. 2000) (citing 42 U.S.C. § 6042(a)(2)(I)(ii); 42 U.S.C. § 10805(a)(4)(B)), federal regulations do provide that "[a]ccess to facilities, records or residents shall not be delayed or denied without the prompt provision of written statements of the reasons for the denial." 42 C.F.R. § 51.43. This suggests that while the ability of protection and advocacy groups to obtain records under the statute is widely recognized, it is less than absolute.

Additionally, the operation of unfettered access under PAIMI and PAIR is less than clear considering the privacy provisions of the PHSA. The PHSA in part states:

Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall ... be confiden-

tial and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b). *Id.* The exceptions in subsection (b) include consent of the patient, court order, medical emergency, and use in criminal proceedings. *Id.* Yet, as the access provisions under PAIMI are not absolute, neither are the confidentiality requirements of PHSA. For example, 42 C.F.R. § 2.13(a) provides that patient records may be disclosed pursuant to these regulations, yet the disclosure must be limited to the information necessary to carry out the purpose of disclosure. Therefore, it appears that protection and advocacy systems such as the Plaintiff may obtain otherwise confidential records by obtaining the consent of D. Doe's personal representative, as stated in 42 C.F.R. § 2.15(b)(2), or upon the application for a Court order for disclosure pursuant to 42 C.F.R. § 2.64.

■ Furthermore, while PAIMI and PAIR indicate a strong intent on the part of Congress to ensure the effectiveness of protection and advocacy groups, the Public Health Service Act evinces an equally strong congressional mandate to protect the privacy of patients undergoing treatment for substance abuse. *See Carr v. Allegheny Health, Educ. and Research Found.*, 933 F.Supp. 485, 487 (W.D.Pa. 1996) ("In sum the sweep of the statute, the broad discretion delegated to the Secretary of Health and Human Services, and the provision for penalties make unmistakable Congress's intent to vigorously protect the range of records about substance abuse.") (*See also United States v. Eide*, 875 F.2d 1429, 1436 (9th Cir.1989)) ("The legislative history of this statutory scheme [PHSA] indicates that Congress intended to deal with this tragic national problem in facilitating the work of drug and alcohol treatment centers by assuring the confidentiality of its patients.")

It is also important to note that maintaining the confidentiality of information does not bar access to D. Doe's records. Plaintiff is entitled to access D. Doe's records as long as the confidentiality requirements of the PHSA are maintained. Throughout its various filings, Plaintiff appears to confuse the concept of access with disclosure. It seems that Plaintiff is arguing that under PAIMI, it has unfettered access to D. Doe's records, thus allowing Plaintiff to disclose this information. However, nowhere in PAIMI is unfettered access or disclosure of information allowed. In fact, 42 C.F.R. §§ 51.45 and 51.46 impose confidentiality requirements upon protection and advocacy systems such as the Plaintiff. Specifically, 42 C.F.R. § 51.45 provides that protection and advocacy systems such as the Plaintiff must "keep confidential all records and information ... pertaining to: clients to the same extent as is required under Federal or State laws for provider of mental health services." This confidentiality requirement also requires protection and advocacy systems to have written policies governing access to, storage of, duplication and release of client records. 42 C.F.R. § 51.45(a)(2). Additionally, this provision implies that when issuing a public report of the results of an investigation, such report should maintain the confidentiality of the individual on whose behalf the investigation was conducted. 42 C.F.R. § 51.45(b)(1). Thus, even if there were no confidentiality restrictions placed upon the Defendants release of D. Doe's records, Plaintiff's unfettered disclosure would be prevented by the confidentiality regulations governing PAIMI. *See generally* 42 C.F.R. § 51.45

The competing statutes in this case should both be given effect to the greatest extent possible. The information contained in D. Doe's records must remain confidential pursuant to the requirements of the PHSA. Consequently, access to D. Doe's records by the Plaintiff is not required unless these confidentiality requirements are ensured. Therefore, the Court will allow Plaintiff access to the records of D. Doe which Plaintiff requires to perform its investigation under PAIMI and PAIR, subject to either the conditions of 42 C.F.R. § 2.15(b)(2), 42 C.F.R. § 2.64, or the Defendants' proposed Access and Confidentiality Agreement filed with the Court on September 12, 2001.

### Conclusion

For all of the above reasons the Court **ORDERS** the following:

1) *Plaintiff's Objections to Order of September 24th Denying it a Preliminary Injunction* is **DENIED.**

2) *Defendant's motion for extension of time to respond to Plaintiff's Objection to Order of September 24, 2001 Denying it a Preliminary Injunction* is hereby **DENIED AS MOOT.**

3) *Plaintiff's Federal Rule 56 Motion for Partial Summary Judgment.* The Court agrees with Plaintiff that it has the authority under PAIMI, 42 U.S.C. § 10801 *et seq,* to determine probable cause of abuse or neglect of an individual triggering an investigation under PAIMI. However, as this is merely a recognized point of law, the Court hereby **DENIES** Plaintiff's Motion For Partial Summary Judgment.

4) *Plaintiff's Federal Rule of Civil Procedure 12(c) Motion for Judgment on the Pleadings* is **DENIED.**

5) *Defendants' Motion for Summary Judgment* is **GRANTED IN PART AND DENIED IN PART.** It is **HEREBY GRANTED THAT** all of Plaintiff's claims are dismissed with prejudice, and Defendants' counterclaim is granted in that the Court will allow Plaintiff access to the records of D. Doe that Plaintiff requires to perform its investigation under PAIMI and PAIR, subject to either the conditions

of 42 C.F.R. § 2.15(b)(2), 42 C.F.R. § 2.64, or the Defendants' proposed Access and Confidentiality Agreement filed with the Court on September 12, 2001. However, the Court **HEREBY DENIES DEFENDANTS' REQUEST FOR RULE 11 SANCTIONS** against the Plaintiff.