**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 25 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CENTER FOR LEGAL ADVOCACY,
doing business as Legal Center for
People with Disabilities and Older
People, also known as Legal Center,
Colorado's Protection and Advocacy
System, P&A System,

     Plaintiff - Appellant,

v.

MICHAEL EARNEST, M.D., in his
official capacity as Medical Director
of Quality Review and Improvement;
PATRICIA GABOW, M.D., in her
official capacity as Medical Director
and Chief Executive Officer;
DENVER HEALTH AND HOSPITAL
AUTHORITY, also known as DHHA,
doing business as Denver Health
Medical Center, also known as
DHMC,

     Defendants - Appellees.

No. 02-1135

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 01-WY-642-CB)**

---

Terry L. Fowler (Mark J. Ivandick with him on the briefs), Denver, Colorado, for
Plaintiff-Appellant.

Sharon E. Caulfield (W. Stuart Stuller with her on the brief) of Caplan and Earnest, LLC, Boulder, Colorado, for Defendants-Appellees.

--------

Before **HENRY** and **McKAY**, Circuit Judges, and **OBERDORFER**, Senior District Judge.[*]

--------

**McKAY**, Circuit Judge.

--------

This case arose out of the death of a homeless person who died while being treated by the Defendant Hospital. On December 22, 2000, a Mr. Doe apparently fell on a Denver sidewalk and injured his head. He was taken by ambulance to the emergency room at the Hospital where he was admitted and treated for a head laceration and acute alcohol intoxication. The record indicates that as part of his initial treatment he was restrained physically and given Inapsine (a medication used to quiet his behavior). Mr. Doe subsequently experienced respiratory arrest followed by cardiac arrest. He was resuscitated and put on a ventilator and then transferred to the intensive care unit. He remained in the Hospital until he died on December 24, 2000. In January 2001, the Center for Legal Advocacy initiated an investigation into his death.

When the Plaintiff Center for Legal Advocacy undertook to carry out its

--------

[*]Honorable Louis F. Oberdorfer, United States Senior District Judge for the District of Columbia, sitting by designation.

statutory mandate[1] to "investigate incidents of abuse and neglect of individuals with mental illness and to take appropriate action to protect and advocate the rights of such individuals," it was denied access to certain medical records by the Hospital. See Iowa Prot. and Advocacy Servs. v. Gerard Treatment Programs, 152 F. Supp. 2d 1150, 1158 (N.D. Iowa 2001) (internal quotes and citations omitted). While there were other disputes, the matter ultimately focused on the Hospital's belief that it was required to withhold the records pursuant to the confidentiality provisions of 42 C.F.R. § 2 *et seq*.

The Center sued to compel access to the information, and the Hospital countersued for a declaratory judgment that it was entitled to enforce the provisions of 42 U.S.C. § 290dd-2 (2001) and the accompanying regulations of 42 C.F.R. § 2 *et seq*. As those regulations explain, the confidentiality provisions "cover any information (including information on referral and intake) about alcohol and drug abuse patients obtained by a program (as the terms 'patient' and

---

[1] The protection and advocacy system is primarily a creation of federal law, namely three federal statutes: 42 U.S.C. § 10801, *et seq*., the Protection and Advocacy for Individuals with Mental Illness Act; 42 U.S.C. § 15043, the Protection and Advocacy for Developmental Disabilities Act; and 29 U.S.C. § 794e *et seq*., the Protection and Advocacy for Individual Rights Act. Protection and advocacy organizations ("P&As") "are intended to investigate incidents of abuse and neglect of individuals with [disabilities] and to take appropriate action to protect and advocate the rights of such individuals." Iowa Prot. and Advocacy Servs. v. Gerard Treatment Programs, 152 F. Supp. 2d 1150, 1157 (N.D. Iowa 2001) (quotations and citations omitted). The Center is the designated P&A for Colorado.

'program' are defined in § 2.11) if the program is federally assisted . . . ." 42 C.F.R. § 2.12(e) (2001).

The Center filed a motion to dismiss the Hospital's counterclaim pursuant to Rule 12(b)(6), alleging that the Center qualified for a "death investigation" exception to the confidentiality regulations. The Center also requested a preliminary injunction. Both of these motions were denied. After discovery, the Hospital filed a motion for summary judgment on both the complaint and the counterclaim. The Center filed a motion for partial summary judgment on the issue of whether it was the sole arbiter of probable cause, a motion to reconsider the denial of the preliminary injunction, and a motion for judgment on the pleadings pursuant to Rule 12(c). The district court granted the Hospital's motion for summary judgment and denied all of the Center's motions.

The parties agree that if, in the circumstances of this case, the Hospital qualifies as a "program" and Mr. Doe qualifies as a "patient," both as defined in § 2.11, then the Hospital is required to enforce the confidentiality provisions of § 2 *et seq.* Section 2.11 provides:

> *Patient* means any individual who has applied for or been given diagnosis or treatment for alcohol or drug abuse at a federally assisted program . . . .
>
> . . . .
>
> *Program* means:
> (a) An individual or entity (other than a general medical care facility)

who holds itself out as providing, and provides, alcohol or drug abuse diagnosis, treatment or referral for treatment; or
(b) An identified unit within a general medical facility which holds itself out as providing, and provides, alcohol or drug abuse diagnosis, treatment or referral for treatment; or
(c) Medical personnel or other staff in a general medical care facility whose primary function is the provision of alcohol or drug abuse diagnosis, treatment or referral for treatment and who are identified as such providers.

42 C.F.R. § 2.11.

Because the regulations limit the analysis to specific units within a general medical facility, it is important to distinguish between the Hospital's emergency room and its formal drug and alcohol treatment program known as Denver Cares. Denver Cares is a program which provides treatment for individuals with drug and alcohol abuse problems. Some of the patients treated at Denver Cares are referred from other departments in the Hospital, including the emergency room, and others are sent directly to Denver Cares by the police or other emergency personnel. The parties concede that Denver Cares qualifies as a "program." However, since Mr. Doe was not treated by Denver Cares, we must determine whether the emergency room qualifies as a "program."

In holding that the Hospital's emergency room qualifies as a "program," the district court relied on United States v. Eide, 875 F.2d 1429 (9th Cir. 1989). In Eide, the Ninth Circuit was faced with facts similar to those here and with a prior version of the same confidentiality provisions, including a prior version of the

-5-

definition of "program" in § 2.11. Applying the then-current regulations to the facts, the Ninth Circuit concluded that, for purposes of the confidentiality provisions, the emergency room at the Veterans Administration Hospital was a "program." See id. at 1436-37. In reaching this conclusion, the Ninth Circuit explained that "[a] hospital emergency room, while obviously also performing functions unrelated to drug abuse, serves as a vital first link in drug abuse diagnosis, treatment, and referral." Id. at 1436.

It is this very language from the Eide opinion that the district court in the instant case relied upon in concluding that the Hospital's emergency room was also a "program." See Center for Legal Advocacy v. Earnest, 188 F. Supp. 2d 1251, 1261 (D. Colo. 2002) (citing Eide, 875 F.2d at 1436). Applying reasoning similar to the Ninth Circuit's, the district court held that the emergency facility was an alcohol abuse program because (1) patients treated initially in the emergency room were often referred to Denver Cares, (2) the emergency department had access to the records held by Denver Cares, and (3) the emergency facility was closely integrated with Denver Cares and provided initial diagnosis and treatment for eventual patients of Denver Cares. See id.

Because the Eide court was applying a prior version of the confidentiality regulations, Appellant argues that the district court relied on immaterial facts and overturned law. We review de novo a grant of summary judgment, viewing the

-6-

facts in the light most favorable to the non-moving party. See Sports Unlimited, Inc. v. Lankford Enterprises, Inc., 275 F.3d 996, 999 (10th Cir. 2002); Goodwin v. General Motors Corp., 275 F.3d 1005, 1007 (10th Cir. 2002).

In response to the Eide decision, the Substance Abuse and Mental Health Services Administration ("SAMHSA")–the agency charged with promulgating regulations under the confidentiality provisions of the Public Health Services Act, 42 U.S.C. § 290dd-2 (2002)–amended 42 C.F.R. § 2.12(e). SAMHSA explained the changes as follows:

> The [Eide] court ruled that the [Veterans Administration Medical Center] was a "person" which is defined at §2.12 to mean "an individual, * * * Federal, State or local government or any other legal entity," and concluded that "(a) hospital emergency room, while obviously also performing functions unrelated to drug abuse, serves as a vital first link in drug abuse diagnosis, treatment and referral." [Citing Eide at 1438.]
>
> The Department believes this interpretation too broadly defines the term "program.". . .
>
> . . . Prior to the 1987 amendments, the regulations applied to any record relating to substance abuse whether the information was obtained from an emergency room, a general medical unit or a general practitioner so long as there was a Federal nexus. In 1987, however, it was the intent of the Department to limit the applicability of the regulations to specialized programs and personnel . . . .

59 Fed. Reg. 42,561, 42,562 (Aug. 18, 1994).

In an effort to realize its stated intent, SAMHSA amended § 2.12(e)(1) to include the following language:

> [T]hese regulations would not apply, for example, to emergency room personnel who refer a patient to the intensive care unit for an apparent overdose, unless the primary function of such personnel is the provision of alcohol or drug abuse diagnosis, treatment or referral and they are identified as providing such services or the emergency room has promoted itself to the community as a provider of such services.

42 C.F.R. § 2.12(e)(1) (2001). This provision, along with the history of its promulgation, is very instructive. It identifies two grounds on which an emergency room could qualify as a "program": (1) if the primary function of emergency room personnel is the provision of drug and alcohol abuse treatment, or (2) if the emergency room has held itself out to the community as providing such services.

The first possible basis for application of these regulations to the Hospital emergency room requires that the primary function of the emergency room "personnel is the provision of alcohol or drug abuse diagnosis, treatment or referral and they are identified as such." See id. The Hospital has provided no evidence, or even assertions, that the emergency room personnel in general, or the personnel who treated Mr. Doe, are identified as primarily providing alcohol and drug abuse treatment.

In fact, there is evidence to the contrary. In his deposition, Dr. Cantrill, the Associate Director of Emergency Medicine at the Hospital, admitted that the emergency room personnel are not identified specifically as licensed alcohol or

-8-

drug abuse treatment providers or counselors.  In another deposition, Dr. Casper, the Director of Behavioral Services at the Hospital, stated that the emergency room was not licensed to provide drug and alcohol treatment and that it primarily provides emergency medical treatment.  Finally, Mr. Snyder, the nurse that treated Mr. Doe, also admitted that he was not a provider of alcohol abuse treatment but rather a trauma nurse.  Because Appellees have failed to provide any evidence that the primary function of emergency room "personnel is the provision of alcohol or drug abuse diagnosis, treatment or referral" and that "they are identified as such," it is clear that this provision does not render the Hospital a "program" for purposes of the Confidentiality Provisions.

The second potential basis for application of the Confidentiality Provisions to the Hospital emergency room requires that the "the emergency room has promoted itself to the community as a provider of such services."  Id.  In concluding that the Hospital held out the emergency department as a program, the district court relied on evidence of integration of the emergency room and Denver Cares.  Indeed, there is significant evidence of integration.  However, these facts are insufficient to prove that the emergency room *holds itself out to the community* as providing drug and alcohol abuse treatment services.

Not only have Appellees failed to provide any evidence that the Hospital has held itself out as such a program, but there is evidence to the contrary.  While

-9-

Dr. Cantrill testified that the emergency department holds itself out as being a fully staffed emergency department and that drug and alcohol abuse often includes medical emergencies, he admitted that the emergency department made no claim that it provided any ongoing care for "[t]he more chronic components of chronic alcohol or chronic drug abuse . . . ." Rec., Vol. II, at 530. Furthermore, Dr. Higgins, a nurse administrator in Behavioral Health Services at the Hospital, admitted in her deposition that the Hospital had never made significant efforts to market the emergency room as part of its drug and alcohol abuse treatment program. Finally, the testimonies of Dr. Casper and Mr. Snyder both point to the fact that neither the emergency room nor its personnel are licensed or identified to the public as part of an alcohol or drug abuse treatment facility.

Having reviewed the record, the opinion of the district court, and the briefs, we conclude that as a matter of law the Hospital's emergency department does not qualify as a "program" within the meaning of Confidentiality Provisions. Therefore, the Hospital is not entitled to summary judgment. Because the Hospital emergency room does not qualify as a "program" within the meaning of the Confidentiality Provisions, we need not address the issue of whether Mr. Doe qualifies as a "patient" within the meaning of those same regulations. On these facts, the Center would be entitled to summary judgment on the merits of both the complaint and the counterclaim. However, the Center did not request summary

judgment on the merits in the trial court, and we must therefore reverse and remand the case for further proceedings consistent with this opinion.

The Center also challenges the denials of its other motions. Those motions involve the sufficiency of the pleadings and a request for a preliminary injunction. Since we have moved beyond the pleadings and ruled on the merits of the case and since there is no longer a final judgment, these issues are not in an appropriate posture for consideration on appeal. Additionally, the Center's motion on appeal for an expedited review of the preliminary injunction matter is DENIED as moot.

In granting summary judgment in favor of Appellees, the district court awarded Appellees their costs. Since we now reverse the grant of summary judgment, Appellees are no longer considered the prevailing party on that motion and that order must be reversed. See Delano v. Kitch, 663 F.2d 990, 1001 (10th Cir. 1981); Amarel v. Connell, 102 F.3d 1494, 1523 (9th Cir. 1997) (citing Farmer v. Arabian American Oil Co., 379 U.S. 227 (1964)). Therefore, we reverse the award of costs to Appellees and remand the issue to the district court for proceedings consistent with this decision.

The district court's Order dated February 22, 2002, is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.